PEOPLE v REAGAN

Docket No. 55562. Argued March 4, 1975 (Calendar No. 4).—Decided November 25, 1975.

E. J. Reagan was charged with assault with intent to do great bodily harm less than murder and with torturing a child. The prosecutor's office agreed to dismiss the prosecution if defendant passed a polygraph examination. Defendant passed the examination and, pursuant to the agreement, the prosecutor sought an order of nolle prosequi, which was approved by the trial court. The prosecutor's office then reinstated the prosecution, having obtained information that the polygraph examination may have been unreliable. Defendant was tried in the Genesee Circuit Court, Donald R. Freeman, J., and convicted on both charges. The Court of Appeals, J. H. Gillis, P. J., and R. B. Burns and R. H. Campbell, JJ., reduced the minimum sentence and affirmed (Docket No. 14609). Defendant appeals. *Held:*

1. The prosecutor's office, in entering the agreement with defendant, gave a pledge of public faith which became binding when the nolle prosequi order was approved by the trial judge.

2. The nature of the agreement should have been stated by the prosecutor on the record before the trial court, and the court, in considering the prosecution request for an order of nolle prosequi, should have exercised informed discretion in deciding whether the prosecution acted within its authority in seeking entry of the order.

3. It was within the power of the prosecution to enter into the agreement; the contention that the agreement per se is against public policy is rejected.

*Conviction reversed and defendant discharged.*

REFERENCES FOR POINTS IN HEADNOTES

[1-2, 5, 6] 21 Am Jur 2d, Criminal Law §§ 151, 152.

Enforceability of agreement by state officials to drop prosecution if accused successfully passes polygraph test. 36 ALR3d 1280.

[4, 7] 63 Am Jur 2d, Prosecuting Attorneys § 25.

Coleman, J., dissented on the grounds that the defendant had risked nothing by the agreement to take the test. He remained in the same legal posture when the prosecutor rescinded his agreement to dismiss the prosecution, and the prosecution has not gained an unfair advantage.

OPINION OF THE COURT

1. CRIMINAL LAW—PROSECUTING ATTORNEYS—AGREEMENT—POLY-GRAPH EXAMINATION—NOLLE PROSEQUI.

The prosecutor's office, in entering into an agreement whereby a prosecution for assault with intent to do great bodily harm less than murder and torturing a child would be dismissed if the defendant passed a polygraph examination, gave a pledge of public faith which became binding when the examination was passed and the nolle prosequi order was approved by the trial judge.

2. CRIMINAL LAW—PROSECUTING ATTORNEYS—POLYGRAPH EXAMINA-TION—JUDICIAL NOTICE.

Judicial notice may be taken of the fact that polygraph use by prosecutors' offices, principally prior to the issuance of a complaint, is not uncommon; however, ordinarily, dispositional use of polygraph test results should not occur after judicial proceedings have been instituted.

3. CRIMINAL LAW—PROSECUTING ATTORNEYS—BARGAINING—CONSID-ERATION.

The standards of commerce do not govern, and should not govern, the administration of criminal justice, and analogy to contract law is inappropriate; the concept of "consideration" has no place in determining whether a bargain between the prosecution and a defendant is binding.

4. DISTRICT AND PROSECUTING ATTORNEYS—NOLLE PROSEQUI.

The prosecutor alone has the power to seek an order of nolle prosequi.

5. CRIMINAL LAW—DISTRICT AND PROSECUTING ATTORNEYS—POLY-GRAPHS—NOLLE PROSEQUI—DISCRETION—RECORD.

The nature of an agreement by which a prosecutor agreed to dismiss a prosecution if the defendant passed a polygraph examination should have been stated by the prosecutor on the record before the trial court and, in considering the prosecution request for an order of nolle prosequi, the court should have exercised informed discretion in deciding whether the prosecution acted within its authority in seeking the order.

6. CRIMINAL LAW—PROSECUTING ATTORNEYS—POLYGRAPH EXAMINA-
    TION—PUBLIC POLICY.

    It was within the power of the prosecutor to enter into an
    agreement whereby a prosecution would be dismissed if the
    defendant passed a polygraph examination, and the contention
    that the agreement per se is against public policy is rejected;
    the trial judge and the prosecutor, in entering the nolle prose-
    qui, were the appointed arbiters of public policy and a pledge of
    public faith gave force to the agreement.

DISSENTING OPINION

COLEMAN, J.

7. CRIMINAL LAW—PROSECUTING ATTORNEYS—NOLLE PROSEQUI—
    AGREEMENT.

    *A prosecutor may rectify an improvident consent to an order of
    nolle prosequi after preliminary examination and binding over
    to circuit court where the defendant has risked nothing in
    making an agreement that the case would be dismissed if the
    defendant passed a polygraph test, at worst the defendant
    would remain in the same legal posture if the prosecutor is
    allowed to withdraw his consent, and the prosecution has not
    gained an unfair advantage.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *Robert F. Leonard,*
Prosecuting Attorney, *Donald A. Kuebler,* Chief,
Appellate Division, and *Joel B. Saxe,* Senior As-
sistant Prosecuting Attorney, for the people.

*Leitson, Dean, Dean, Segar & Hart, P. C.* (by
*Robert L. Segar),* for defendant.

J. W. FITZGERALD, J. The principal issue on this
appeal concerns the binding effect of an agree-
ment, entered into by defendant and the Genesee
County Prosecutor's office, to dismiss the prosecu-
tion if defendant passed a polygraph examination.
Defendant passed the polygraph examination. Pur-
suant to the agreement, the prosecutor sought an
order of nolle prosequi. Such an order was ap-

proved by the trial court. The prosecutor's office then reneged on the acknowledged "agreement" and reinstituted prosecution, having obtained information indicating that the polygraph examination of defendant may have been unreliable. Defendant was subsequently convicted of child torture and assault with intent to do great bodily harm less than murder. We conclude that the prosecutor's office, in entering into the agreement with defendant, gave a pledge of public faith which became binding when the nolle prosequi order was approved by the trial judge. Defendant is discharged.

## I.

Defendant was initially arrested and charged with assault to do great bodily harm less than murder and torturing a child.[1] After a duly conducted preliminary examination he was bound over to the Genesee County Circuit Court for trial. On May 17, 1971, he was arraigned on the charges and stood mute. A plea of not guilty was accordingly entered on his behalf.

In July of 1971 defendant, through the initiative of his counsel, submitted to and passed a privately conducted polygraph examination. Subsequently negotiations were entered into with the Genesee County Prosecutor's office and an agreement was reached whereby if defendant passed a polygraph examination given by the Michigan State Police, his prosecution would be dismissed. On September 10, 1971, a polygraph examination of defendant was given by Sergeant Ralph E. Cabot of the

---

[1] MCLA 750.84; MSA 28.279 and MCLA 750.136a; MSA 28.331(1). The people's evidence, introduced at the trial at which defendant was ultimately convicted, indicated that defendant, acting as a babysitter, immersed the feet of a child in hot water causing serious injury.

Michigan State Police. Defendant passed this poly-graph examination.[2]

Pursuant to his agreement with defendant the prosecutor's office prepared an order of nolle prose-qui for presentation to the circuit court. This form order indicated on its face that the prosecution had no objection to entry of an order of nolle prosequi and further stated:

"Defendant has passed two polygraph examinations, one by Det. Sparks (private), and one by Ralph Cabot of the Michigan State Police. Both examinations found that the injury was at most the result of defendant's negligence. Both Dr. Cloonan and Schappach said the injury could have occurred as the defendant described to Ralph Cabot."

No proceedings of record were had with respect to the matter of dismissal. The form order submitted was signed by the trial judge on September 15, 1971.

Subsequent to the foregoing events, the prosecu-tor's office entertained serious misgivings about the polygraph test results, given the "compelling circumstantial evidence" of defendant's criminal involvement.[3] As a result of these doubts an assist-ant prosecuting attorney contacted the psychiatrist heading the Center for Forensic Psychiatry and was informed that, with respect to crimes such as defendant allegedly committed, a schizophrenic nature will sometimes distort polygraphic test re-sults. The prosecutor's office was further informed

---

[2] Sgt. Cabot indicated his conclusion as follows: "Emotional re-sponses given on the polygraph examination by E. J. Reagan were not sufficient to indicate deception and it is Examiner's opinion that he is being truthful when describing how the incident happened."

[3] The term "compelling circumstantial evidence" was employed by an assistant prosecutor at a hearing before the trial court on defend-ant's motion to quash the second information. See Appendix A hereto.

that serum tests would overcome the personality character of a schizophrenic and "get to the truth". Armed with this knowledge the prosecution approached defendant and indicated that the agreement would be honored only if defendant submitted to serum testing. Defendant refused. The prosecution then filed a new complaint on the same charges as had previously been made. Defendant was bound over at a second preliminary examination. Defendant countered by moving to quash the information on the basis of the earlier "agreement".[4] The trial court rejected defendant's contention, acknowledging the agreement, but failing to see that defendant had been in any way "prejudiced" by withdrawal of the agreement.[5] Defendant was ultimately tried by jury and convicted as charged.[6]

Defendant's conviction was affirmed by the Court of Appeals in a brief, unpublished per curiam opinion.

## II.

MCLA 767.29; MSA 28.969 states:

"It shall not hereafter be lawful for any prosecuting attorney to enter into a nolle prosequi upon any indictment,[7] or in any other way to discontinue or abandon

[4] A chronology of events as described by the assistant prosecutor involved at the hearing on defendant's motion to quash the second information appears as Appendix A to this opinion.

[5] "Prejudice" was narrowly viewed in terms of loss of rights to defendant due to passage of time. The trial court did not find prejudice in the fact that defendant was, irrespective of agreement, being forced to trial.

[6] Statements made by him on the occasion of the polygraph were used against him at trial to show inconsistency in his testimony. Defendant claims on appeal that he was prejudiced by such action.

[7] MCLA 767.2; MSA 28.942 provides that all provisions of the law applying to prosecutions and proceedings on indictment shall apply to prosecutions and proceedings on information.

the same, without stating on the record the reasons therefor and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes."

The nature of the trial court role, in approving or disapproving an order of nolle prosequi, is set forth in *Genesee Prosecutor v Genesee Circuit Judge,* 391 Mich 115, 121; 215 NW2d 145 (1974).

"[I]n proposing to nolle prosequi, discontinue or abandon a prosecution, the circuit judge reviews the action of the magistrate and prosecuting attorney on the record—the record made before the magistrate at the preliminary examination, and the prosecutor's statement of reasons and 'the evidence filed in the case'. Such review is a judicial review, searching the record to determine whether the magistrate's or prosecutor's decision is in accord with the law, facts and reason of the matter.

"A circuit judge * * * may reverse or revise [the magistrate's or prosecuting attorney's] decision only if it appears on the record that they have abused the power confided in them."

In the present case the reasons presented by the prosecutor in support of the nolle prosequi were that defendant had passed two polygraph tests and that his innocence was compatible with the testimony of two doctors. No record review as contemplated by *Genesee Prosecutor* was apparently had in this case. There is no indication that the judge took note of the "evidence filed in the case" for purposes of reviewing prosecutorial discretion. The judge was never made aware of the agreement of the prosecutor with defendant. While entry of the order of nolle prosequi cannot be said to approve an agreement never presented to the court, entry of the order represented necessary fruition of the

agreement and approval of its stated basis as a matter of law and fact. *Genesee Prosecutor, supra.*

## III.

We take judicial notice of the fact that polygraph use by prosecutors' offices, principally prior to the issuance of a complaint, is not uncommon,[8] and indeed is a useful investigatory device, though its use is not approved at trial.[9] Prosecutorial use of polygraph test results at any stage of the proceedings necessarily has the effect of supplanting the trial process. This is particularly so, where, as here, the prosecution is dismissed after a preliminary examination determination that there was probable cause to believe the crime charged was committed. We cannot commend the wisdom of the action taken by the prosecution and trial judge in this case. Ordinarily, dispositional use of polygraph test results should not occur after judicial proceedings have been instituted.

The role of the "bargaining" relationship between the people (and their bargaining agent, the prosecutor) and a defendant charged with crime is now generally recognized. As the United States Supreme Court in *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), commented:

"The disposition of criminal charges by agreement between the prosecutor and accused, sometimes loosely called 'plea bargaining' is an essential component of the

[8] The assistant prosecuting attorney testifying at the hearing on defendant's motion to quash the information indicated that the Genesee prosecutor's office relies on the polygraph in "almost all" the cases in which it is used.

[9] The admissibility of polygraph evidence at trial is raised in *People v Barbara,* not yet decided. (Docket No. 54774, argued in January, 1975).

administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full scale trial, the states and the Federal Government would need to multiply many times the number of judges and court facilities."

The binding nature of a plea bargain was recognized in *Santobello*. The binding nature of "plea bargains" has in like fashion been recognized by the courts of this state. See, *e.g., People v Eck,* 39 Mich App 176; 197 NW2d 289 (1972); and *People v Hildabridle,* 45 Mich App 93; 206 NW2d 216 (1973).

Most courts which have considered the bargaining relationship have done so in the context of a plea-bargain situation. We agree with the people that this case presents atypical circumstances. No plea was the subject of bargain here. Defendant had much to gain and relatively little to lose by subjecting himself to the polygraph. The people contend that the bargain offered defendant was a "gift-type" bargain which lacked the consideration necessary to make it binding.[10] While there is precedential reference to the concept of "consideration" for a bargain in the context of the administration of criminal justice,[11] we feel that here the analogy to contract law is inappropriate. The standards of commerce do not govern, and should not govern, the administration of criminal justice.

[10] A prosecutor who enters into an agreement of this kind has doubts about the defendant's guilt. If the defendant fails the polygraph examination, such doubts may be removed and a faltering investigation energized. The prosecutor is less likely to agree to charge concessions. He knows that if the defendant takes the stand at trial he may wilt under the pressure of intensive cross-examination.

There is no way of assuring that the test results will not come to the judge's attention. The defendant may therefore be unable, as a practical matter, to waive jury trial. The test results may strengthen a judgment of conviction resulting in imposition of a longer sentence or delay in parole.

[11] *See Santobello, supra.*

Cases from other jurisdictions offer assistance in determining whether defendant is entitled to fulfillment of the promise of the bargain. The most significant cases in point are *State v Davis,* 188 So 2d 24 (Fla App, 1966), and *Butler v State,* 228 So 2d 421; 36 ALR3d 1274 (Fla App, 1969). In *State v Davis,* defendant was indicted for first-degree murder and entered a plea of not guilty. Shortly before trial, defendant and the prosecution entered into a bargain whereby defendant agreed to take a polygraph test administered by an appointed examiner. If the polygraph showed defendant was telling the truth, the case against him would be dismissed. On the other hand, if the test showed he was not telling the truth, he would enter a plea of guilty to the lesser charge of manslaughter. The test was given by the appointed examiner and the examiner indicated his opinion that defendant was telling the truth. Subsequent verification of another polygraph examiner was sought by the examiner who administered the test. This examiner disputed the finding that defendant was telling the truth.[12] The state refused to dismiss the indictment and defendant moved to quash on the basis of the agreement. In finding the agreement enforceable, the Florida Court of Appeals reasoned:

"[I]t can be seen that where a plea of guilty is entered in reliance upon a promise to dismiss other charges, the promise may be enforced and raised as a bar to prosecution. The difference between that situation and the one before us is the added act regarding

---

[12] The second examiner opined that the technique used by the first examiner was questionable. He viewed the test results as inconclusive although acknowledging that much of the outcome of the polygraph test depends upon the examiner. The first, and appointed, examiner acknowledged nonetheless that his independent opinion that defendant was telling the truth was unchanged by the second examiner's views.

the polygraph examination. Defendant had agreed to plead guilty to manslaughter if the test was not in his favor, but the state had agreed to dismiss the case if the results indicated defendant was telling the truth. This was a pledge of public faith—a promise made by state officials—and one that should not be lightly disregarded."[13]

In *Butler v State, supra,* defendant, charged with rape, and the prosecutor reached an agreement after indictment. According to the terms of the agreement the prosecution would be dismissed if the polygraph indicated defendant was telling the truth. If the test showed otherwise, defendant consented to the use of test results at trial or upon appeal. The agreement was discussed in court before the trial judge. The polygraph examiner concluded defendant was telling the truth when he denied participation in the rapes charged. An order of nolle prosequi was obtained. The state thereafter initiated prosecution. Defendant was indicted and convicted. His motion to quash on the basis of the agreement was denied. In examining the merits of defendant's reliance upon the agreement, the *Butler* Court concluded:

"Criminal prosecutions are, of course, a deadly serious undertaking. They are not a game and sportsmanship is perhaps not a factor. Even so, we feel that our historical ideals of fair play and the very majesty of our

---

[13] The approval or lack of approval of the agreement by the trial court was not viewed as determinative under Florida law which does not require judicial approval of nolle prosequi. *See Davis, supra,* and *Butler, supra.* Michigan law does require judicial approval. *See* MCLA 767.29; MSA 28.969, cited above. Lack of judicial approval when such is statutorily required has been said to nullify the effect of purportedly dispositional agreement between the prosecution and a defendant. *See State v Sanchell,* 191 Neb 505; 216 NW2d 504 (1974), in which the Supreme Court of Nebraska held that defendant was not entitled to enforcement of a bargain with the prosecution to nolle prosequi if defendant passed a polygraph where the trial court refused to give force to the agreement by dismissing the prosecution.

government command that an advantage as here reflected not be sanctioned. In parting on this question, we, while honoring the right of the state to choose its procedures and weapons of prosecution, would quite frankly question the wisdom of such contracts which tend to remove the decision to prosecute and the guilt determination from the hands of the traditional authority and delegate it to the conscience of a scientific device—a device which may not be infallible."

The people argue that the actions of both the prosecutor and the trial judge in, in effect, sanctioning the agreement with defendant are against public policy and should, therefore, not be found binding.

Reviewing the facts in this case we are cognizant of record testimony indicating that the agreement with defendant was entered into with the knowledgeable concurrence of key members of the prosecutor's staff. As this Court has recently observed, the prosecutor enjoys a position of high public trust and authority distinct from the position of the trial judge.[14] The prosecutor alone has the power to seek an order of nolle prosequi.

In Michigan, a trial court approval is the *sine qua non* of the decision to nolle prosequi.[15] The trial court in this case approved the recommendation of nolle prosequi, having been apprised of defendant's passage of two polygraph tests and that the testimony of other witnesses lent credence to defendant's story. The trial court, however, was not aware of the purportedly binding agreement of the prosecutor and defendant. Normally a nolle prosequi is a dismissal without prejudice which does not preclude initiation of a subsequent prosecution. *People v Curtis,* 389 Mich 698; 209 NW2d

[14] *Genesee Prosecutor v Genesee Circuit Judge, supra.*
[15] *See* MCLA 767.29; MSA 28.969, cited above.

243 (1973). Under the facts of this case, however, entry of the order of nolle prosequi was by its presence the final act of fruition of a binding agreement.

While by no means disapproving the use of the polygraph as is the current practice, in retrospect we feel constrained to observe that it would have been advisable, at the very least, that the prosecution acquaint itself with the limitations of the polygraph before entering into an agreement to dismiss the case on the basis of polygraph results and then proceeding on to nolle prosequi. The nature of the agreement should have been stated by the prosecutor on the record before the trial court. The trial court, in considering the prosecution request to nolle prosequi, should have exercised informed discretion[16] in deciding whether the prosecution acted within its authority in seeking entry of an order of nolle prosequi.

It was within the power of the prosecution to enter into this agreement. We therefore reject the contention that the agreement per se is against public policy, noting that here the trial judge and the prosecutor were the appointed arbiters of public policy. In our view, a pledge of public faith in this instance gave force to an unwise agreement which became binding upon trial court approval of nolle prosequi. We are not confronted with the situation where the prosecutor is misled by force of defendant's connivance into a disadvantageous agreement or where facts not within the fair contemplation of agreement have come to light. We find, contrary to the trial court determination, that defendant was prejudiced by the proceedings below. Upon trial court approval of nolle prosequi,

---

[16] See the description of the exercise of informed discretion in *Genesee Prosecutor v Genesee Circuit Judge,* quoted above.

defendant was entitled to rely upon the agreement.

Law enforcement processes are committed to civilized courses of action. When mistakes of significant proportion are made, it is better that the consequences be suffered than that civilized standards be sacrificed.

Conviction reversed and defendant discharged.

T. G. KAVANAGH, C. J., and WILLIAMS and LEVIN, JJ., concurred with FITZGERALD, J.

LINDEMER, J., took no part in the decision of this case.

## APPENDIX A

The following interchange between court and counsel is recorded on the transcript of the hearing on defendant's motion to quash the information:

*The Court:* In the matter of the People of the State of Michigan versus E. J. Reagan, file number 23994. * * * Were you the Assistant Prosecutor that was before me on the original Nolle Pross?

*[Assistant Prosecuting Attorney]:* That is correct, your Honor.

*The Court:* And, I think we all understand what was involved. There was a Nolle Pross that the Court entered. And, I did ask [defense counsel] whether there was new information that the Prosecutor's Office had on the reissuance of a second warrant.

*[Assistant Prosecuting Attorney]:* There was no new factual information. Your Honor, let me explain what the circumstances were. The attorney who handled the case was not in agreement with [defense counsel]. The defendant was to take a

polygraph examination. If he would pass that, we were going to Nolle Pross the case. And, there is a procedure that is followed. He did pass it. We Nolle Prossed the case. But because of the real tragic circumstances of the case, because of what we consider to be compelling circumstantial evidence, I was concerned about the fact that we Nolle Prossed the case. I was concerned about the validity of the polygraph examination. And, I talked to Dr. Ames Robey, who was the psychiatrist heading up the center for forensic psychiatry, for the State of Michigan. He explained to me that, particularly in crimes of this nature, there is a substantial likelihood that the perpetrator of the crime doesn't really know he did it. That is, his personal make-up is to some extent schizophrenic in nature. And, under those circumstances the defendant would not show any deception to a polygraph examination.

*The Court:* And, you had not talked to Dr. Ames Robey prior to making a motion to Nolle Pross?

*[Assistant Prosecuting Attorney]:* Pardon me?

*The Court:* You did not talk to Dr. Robey prior to your making a motion to Nolle Pross?

*[Assistant Prosecuting Attorney]:* No, I had not.

*The Court:* I think—

*[Assistant Prosecuting Attorney]:* —I think it was poorly handled. I admit that. An agreement, deal was made between counsel and the Prosecutor's Office. A deal which is commonly made, and the only thing to do about it is to proceed under the agreement, and we did. And, let me—

*The Court:* Can I say this, maybe it would be helpful in making your position to me known. [Defense counsel] is saying, well, this man is prejudiced by all of this. He had a right to an early trial. He had a right to have his case determined

one way or the other. And, after the Nolle Pross, he was re-arrested. He has to go through this all over again. And, this is an interference in his rights in going through it the second time.

*[Assistant Prosecuting Attorney]:* Your Honor, I agree with that. The first time was in Circuit Court. One time there was an adjournment to which [defense counsel] agreed to, and that was for the purpose of having a polygraph examination. Unless we are making agreements, the purpose of a polygraph examination is, for anything other than to get to the truth. We rely upon that polygraph examination. We do on almost all cases. We did in this case. But, my discussion with Dr. Robey brought out some important things. And, probably we made a very drastic mistake in this case; and that the polygraph examination did not, or was not valid. It may well have been valid. I was very concerned about this. I talked to [defense counsel], and justifiably he was pretty upset with our office, because I told him that we were going to be going back on the deal. I said, Dr. Robey is able and willing to conduct tests which would get to the truth of this matter. There are two serum tests which are valid, and which would overcome the personality character of the defendant, and get to the truth. And, Dr. Robey advised me, or told me about a case which was almost identical to this case. The crime was very similar. It was where he had passed the polygraph, and where they conducted a truth serum interview with the individual, and the entire truth came out. And, I said to [defense counsel], we would like to send him down there, because we are very concerned about the truth. I believe everybody involved in this case is very concerned about the truth. I don't think that the defendant can be prejudiced by any efforts on

our part to get to the truth. I don't think he can be prejudiced by a delay, which I think was initially made to get at the truth. And, it is an unfortunate set of circumstances. But, I don't think that we have done anything but to make a maximum effort to guarantee the defendant all of his rights. And, I think we have conducted it with an—with our objection being dismissing the case against the defendant, if we can be satisfied that he didn't do it.

*The Court:* [Assistant prosecuting attorney], you do not have to tell me if you are not able to, but was this matter fully discussed with your office, * * * to determine whether or not this matter should have been initially Nolle Prossed?

*[Assistant Prosecuting Attorney]:* Yes, your Honor, it was.

*The Court:* And, there was an agreement, wasn't there, that that is what your office wanted to do?

*[Assistant Prosecuting Attorney]:* That is correct.

*The Court:* It was not a personal judgment that you alone made?

*[Assistant Prosecuting Attorney]:* No. I did not make it alone. I did not make any of the decisions with respect to the handling of the case alone.

*The Court:* What about the judgment of reinitiating the case?

*[Assistant Prosecuting Attorney]:* That was the office's decision.

*The Court:* Was it [the prosecutor's] decision?

*[Assistant Prosecuting Attorney]:* The decision to reinstate the case was [the prosecutor's] decision. He did not make that decision until after the contents of the conversation, that conversation that I had with Dr. Robey, was released to him. He requested that I speak to Dr. Robey about this case.

*The Court:* When you get right down to it, we are all in agreement that the Prosecutor knows that he never should have made the order to Nolle Pross. And, I suppose he would agree that he never should have made it.

*[Assistant Prosecuting Attorney]:* I agree with that. But that is not the only issue. I think that the real question is, whether the defendant is entitled to a dismissal of the case, which he is interested in, or at least this is the substance of his motion, because of undue prejudice. And, I do not think he has been prejudiced at all. I think, that maybe the form of our agreement was, that he should take a polygraph examination. But there was no question of what the substance was, if he is not guilty, but that we should dismiss it. And, it is a very unusual case. The evidence supporting the charge; the nature of the crime is unusual; the fact that he passed the polygraph when the doctor says that may be nothing, is very unusual.

*The Court:* I am going to adjourn the motion for a week.   * * *

M. S. COLEMAN, J. *(dissent).* The facts set forth in the majority opinion are accepted. Of significance, the district court found probable cause to believe that defendant was guilty of the charges of child torture and assault with intent to do great bodily harm less than murder. Defendant was bound over to circuit court and stood mute at his arraignment.

At this point in the proceedings, defendant asked for the polygraph test in question and a member of the prosecutor's staff "agreed" that if he "passed" the test, the case would be dismissed. The examiner found that the "Emotional re-

sponses given on the polygraph test * * * were not sufficient to indicate deception * * * ". An order of nolle prosequi entered by the circuit judge without objection. We do not know what transpired when the case was dismissed or if the judge took note of the evidence filed in the case as required because no record was made.

Subsequently, however, the prosecutor had cause to question the validity of the polygraph test. A new warrant was issued and again defendant was bound over after a preliminary hearing and was arraigned in circuit court.

Trial and conviction on the original charges provide the issue upon which this appeal was granted.

No reasonable person could dispute the majority's contention that "Law enforcement processes are committed to civilized courses of action". However, I must respectfully disagree with the implication that the prosecutor may never rectify an improvident consent to an order of nolle prosequi.

The majority readily admits that generally a nolle prosequi is a dismissal without prejudice which does not preclude initiation of a subsequent prosecution. *People v Curtis,* 389 Mich 698; 209 NW2d 243 (1973). Likewise, the majority readily concedes that this was not a plea bargain situation. *Santobello v New York,* 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971). In fact, in no way is this a *Santobello* case.

In an attempt to support their position, my colleagues cite *State v Davis,* 188 So 2d 24 (Fla App, 1966), and *Butler v State,* 228 So 2d 421; 36 ALR3d 1274 (Fla App, 1969), as being in point. Although finding no disagreement with the Florida language quoted, I find that *Butler* and *Davis* are inapposite on their *facts.*

In *Davis,* the defendant was charged with first-degree murder. The defendant agreed to plead guilty to manslaughter if the polygraph test showed he was not telling the truth.

In *Butler,* the defendant was charged with rape. The defendant agreed to allow the polygraph test results to be used at trial or upon appeal if the test showed he was not telling the truth.

Thus, while it may be said that the prosecution in *Butler* and in *Davis* took unfair advantage of the defendants by failing to fulfill its portion of a reciprocal agreement, no such advantage was gained here. The defendant having given up nothing has lost nothing. The worst that could have happened to him was to remain in the same legal posture.

I agree with the *Butler* court that "Criminal prosecutions are, of course, a deadly serious undertaking. They are not a game * * * ." Nor do I believe that "sportsmanship" is denigrated under these circumstances.

Defendant risked nothing in this one-sided "agreement"—and indeed had nothing to lose by taking the polygraph test. It is the people of Michigan who instead are cast in the role of "losers".

Under the circumstances of this case, I would affirm the Court of Appeals.