**The PEOPLE of the State of Colorado,**
**Plaintiff-Appellee,**

v.

**Santos ROMERO, Jr.,**
**Defendant-Appellant.**

**No. 82CA0581.**

Colorado Court of Appeals,
Div. I.

Aug. 15, 1985.

Rehearings Denied Sept. 5, 1985.

Certiorari Granted Jan. 13, 1986.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Maureen Phelan, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, Colo. State Public Defender, Rachel Bellis, Deputy State Public Defender, Denver, for defendant-appellant.

STERNBERG, Judge.

The defendant, Santos Romero, Jr., appeals his conviction on two counts of felony murder and one count of conspiracy to commit second degree sexual assault. He contends that the trial court erred in allowing his prosecution despite a grant to him of immunity for "passive involvement" in the homicides; in allowing the use of post-hypnotic recollections of witnesses at trial; and in allowing the prosecution to amend the felony murder counts after the trial had commenced. We reverse.

In April 1978, the bodies of two young women were found in a canyon near Fort Collins, Colorado. Autopsies performed on the women showed that death had resulted from massive head injuries. At the scene, the police found a forty-three pound rock with blood on it, and an indentation in the ground near one of the bodies which matched the general shape of the rock. There was evidence indicating that the women had been sexually assaulted.

The investigation of these homicides continued throughout a three-year period. During that time, the police had difficulty obtaining information from witnesses, and much of the information they did obtain was fragmented and given sporadically. In November of 1978, police investigators were contacted by a person who claimed that the defendant knew something about the homicides; thereafter, the police interviewed the defendant. The defendant told the police that he had heard his brother, Porfirio Romero, and Joe Salas talking about planning to rape the victims, discussing how and where it could be done, and that later he heard them saying they had killed them.

Subsequently, the defendant was subjected to hypnotic interviews in December 1978 and January 1979. The defendant expressed doubt and confusion about the implications of a hypnotic interview prior to the first one. To allay his doubts, a written agreement with the district attorney's office was obtained in which the prosecution promised "to grant immunity to Santos Romero in regards to his passive involvement in the ... homicide." In exchange for this promise, the defendant agreed to undergo hypnosis in order to help him remember everything he knew about the homicides. No charges had been filed against the defendant at that time, and he was not represented by an attorney. Parts of this interview were recorded, but there is no indication that the police took a written or recorded statement prior to the hypnosis.

In the months following the hypnotic sessions, the defendant made inculpatory or inferentially inculpatory statements about the homicides to police officers, friends, and his ex-wife. A grant of immunity from prosecution was given one of the participants. Eventually, the defendant was charged, prosecuted, and convicted; the two co-defendants were tried separately.

The trial court ruled that the agreement was not a statutory grant of immunity pursuant to § 13–90–118, C.R.S. (1978 Repl. Vol. 8), and concluded that because there was no "common law immunity" applicable to this particular situation, only the statements made by the defendant while under

hypnosis had to be suppressed. In so doing, the court erred.

■ If a defendant enters a guilty plea in reliance on a prosecutorial promise or agreement, he is entitled either to withdraw the plea or to require performance of the agreement. *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). Although *Santobello* concerned a plea bargain, the expectation created in a defendant by other apparently official promises, accompanied by detrimental reliance, should likewise be protected. *See People v. Manning,* 672 P.2d 499 (Colo. 1983); *State ex rel. Plant v. Sceresse,* 84 N.M. 312, 502 P.2d 1002 (1972); *People v. Reagan,* 395 Mich. 306, 235 N.W.2d 581 (1975).

Such protection is exemplified in *People v. Fisher,* 657 P.2d 922 (Colo.1983) in which the issue concerned a police officer's promise not to use a videotape made by defendant in any criminal prosecution of him. The Colorado Supreme Court held that:

> "[B]ecause the officer's promise implicated [the] constitutional rights of the defendant, because the defendant took detrimental action in reasonable reliance upon the promise, and because no other remedy short of enforcement of the promise would secure fundamental fairness to the defendant, the Due Process Clauses of the United States and Colorado Constitutions ... require suppression...."

■ The essential theme running through these cases is that an accused has a constitutional right to be treated with fairness throughout negotiations with the state. *See Cooper v. United States,* 594 F.2d 12 (4th Cir.1979). Therefore, when a defendant has acted with reasonable and detrimental reliance on a governmental promise, the government must be estopped from going back on its promise. *See People v. Manning, supra.*

Here, in reliance on the promise that he would be given immunity for any "passive involvement" in the homicides, the defendant acted to his detriment by undergoing hypnosis and making statements which implicated him in the victims' deaths. His statements indicated knowledge of the murders, and they implicated him not only as an observer, but also as a co-conspirator or complicitor in those deaths.

At a suppression hearing, the prosecution presented testimony that "passive involvement" was understood by the parties as meaning that the defendant was present at the crime but not aware of it, or that he learned about it afterwards but did not report it. The defendant testified that his understanding was that he was immune from prosecution for anything he said about the actual killing.

Despite their varying interpretations of the scope of immunity, none of the principals contended that no immunity at all was granted. The issue is the extent to which the defendant's involvement in the murders can be characterized as "passive."

"Passive" involvement in criminal activities is a unique classification; we are aware of no authority to guide us in making this classification, nor have we been directed to any by counsel.

In attempting to determine the culpable conduct for which this defendant was granted immunity, we run directly into the impossible task of forming a distinction between "active" and "passive" participation. The same evidence could be probative of both types of involvement.

The difficulty in making a distinction that is neither artificial nor illusory is exacerbated by the conspiracy charge, and the jury instruction that if the defendant agreed to aid in the commission of the crimes, he could be responsible for the deaths caused by "anyone" in the course of a felony. The proof of the agreements and the kind of aid that could support the felony murder conviction included evidence that we perceive as probative of either "passive" or "active" involvement.

Nevertheless, despite the fact that the extent of the immunity may not be circumscribed, it is clear that the government intended to grant immunity for some level of culpable conduct, and the government

may not renege on such a promise. *See People v. Manning, supra; People v. Fisher, supra.*

Hence, because of the ambiguity in the grant of immunity, and because of our conclusion that, under the facts of this case, the actions or degree of participation covered by the grant of immunity are not ascertainable, we hold that the grant of immunity must extend to the defendant's participation in the entire transaction. Consequently, the defendant may not be tried for his participation in these crimes pursuant to what we must hold to be a grant of transactional immunity.

Because of our disposition of the case on this issue, we do not address the other contentions of error concerning the amendment of the information and the use of post-hypnotic testimony.

The judgment is reversed, and the cause is remanded with directions to discharge the defendant.

VAN CISE and BABCOCK, JJ., concur.