*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellant

v

BRIAN EDWARD BOROWKA, JR.,

      Defendant-Appellee.

UNPUBLISHED
September 17, 2019

No. 346398
Kent Circuit Court
LC No. 17-010721-FC

Before: SWARTZLE, P.J., and GLEICHER and M. J. KELLY, JJ.

PER CURIAM.

Once an information is filed and a prosecution is underway, MCL 767.29 constrains the prosecutor's power to dismiss the matter without prejudice, called a *nolle prosequi*. "Leave of the court" is required. This statutory mandate replaced the common-law principle that dismissal was a prosecutor's prerogative, regardless of the judge's view. The statute dictates that "a trial court's approval is the *sine qua non* of the decision to nolle prosequi." *People v Reagan*, 395 Mich 306, 317; 235 NW2d 581 (1975).

The trial court denied leave to file a *nolle prosequi*, finding that the prosecutor was motivated solely by a desire to "get around" the court's decision not to adjourn the trial. And because the prosecutor refused to proceed after the court's adjournment ruling, the court subsequently dismissed the case with prejudice. None of these rulings constituted an abuse of the trial court's discretion. We affirm.

I

In November 2017, the prosecution charged defendant Brian Edward Borowka, Jr., with first and second-degree criminal sexual conduct—MCL 750.520b(1)(a), MCL 750.520b(2)(b), MCL 750.520c(1)(a), MCL 750.520c(2)(b)—arising from sexual acts allegedly committed against his then nine-year-old daughter. Borowka waived a preliminary examination. The district court initially set his bond at $500,000. Borowka posted 10% of that amount, for which he paid a $12,000 bondsman's fee.

In advance of the June 18, 2018 trial date, the prosecution filed a notice of intent to introduce expert testimony and similar acts evidence under MRE 404(b). During a June 13 hearing, the parties agreed that the expert's testimony would be limited to certain areas of inquiry. But counsel clashed about whether the prosecution could establish the prerequisites for admission of the 404(b) evidence. The prosecutor represented that the proposed witness, BQ, had been sexually assaulted by the Borowka 17 years previously, under circumstances similar to those alleged in the current case. The defense asserted that the "transactions aren't similar" and asked for an offer of proof. Defense counsel stressed, "I'm prepared to try the case on Monday [June 18]. I'd prefer to get it rolling[.]"

The trial court issued a written opinion and order the next day, finding that "the current record is insufficient to make a ruling on admissibility." The court elaborated:

> In this case, the Court has relatively little information regarding the specific allegations related to [the victim] or the prior incident involving [BQ]. The attorneys have made differing characterizations regarding the incidents, including similarities and differences, but the limited record does not allow the Court to sort through the different allegations to make an informed ruling regarding admissibility. Additionally, many of the arguments so far appear to conflate the analysis under MCL 768.27a and MRE 404(b), despite the critical differences and important distinctions that must be made.

> Accordingly, the Court finds the current record is not sufficient to make a ruling regarding admissibility of evidence of the alleged prior acts. It is proper to hold an evidentiary hearing outside of the presence of the jury to allow the development of the record to address the other-acts evidence. At the hearing, it is expected that the prosecution will at least present testimony from [BQ], but the Court is willing to consider other testimony and evidence from the prosecution or the defense if relevant to the issues in making an admissibility determination. . . .

The court scheduled the evidentiary hearing for July 27 and adjourned the trial until September 17.[1] On or before July 27 hearing, the prosecutor advised the court that BQ was on a "mission trip" in Hawaii and unable to attend. The court reiterated that an evidentiary hearing would be held to consider the admissibility of the 404(b) evidence before BQ would be permitted to testify.

The prosecution lost touch with BQ and informed the court of this problem on September 13. At the prosecutor's request, the trial court signed a material witness warrant that day. When the parties appeared for trial on September 17, the prosecutor revealed that BQ's whereabouts remained unknown, and requested an adjournment. A lengthy hearing ensued.

---

[1] The court's initial order set the trial for September 24, 2018. Counsel agreed to the September 17 date.

-2-

The court prefaced its adjournment ruling by noting that the scheduling guidelines required a trial within 301 days of the bindover and that the time would expire on September 24. The first adjournment was at the prosecutor's request, the court recalled, despite that the defense was "very desirous of going forward[.]" The court acknowledged that "guidelines are just that," but expressed its own preference that the case be tried within them. The September trial date was an acceptable compromise: "So the way I looked at it, I was giving the prosecution what they wanted, delaying the actual trial to a later time, over the objection of the defense."

On the morning of trial, the prosecution informed the court that BQ could not be found, and proposed an adjournment. The court recapitulated that "[t]he defense objected to that adjournment. . . . The Court indicated that I did not feel under the circumstances here that an adjournment was warranted." In the court's view, BQ was merely a potential similar-acts witness and could offer no direct evidence relevant to the case.

The prosecutor advised that she had lost contact with BQ in July, and believed that her testimony would be "relevant and admissible." If an adjournment was not granted, the prosecutor warned, she "would be filing a nolle and request that it be dismissed without prejudice until we find [BQ] and bring her before the Court." Defense counsel strongly objected to an adjournment and contended that a "nolle without prejudice . . . would be fundamentally unfair to my client." Borowka had incurred legal and detective fees and the cost of the bond, counsel insisted, and the defense stood ready to try the case. He highlighted, "My client's life has been placed on hold. He has a job now, but there's a lot of stress on him with these allegations in the background. . . . This is . . . an extremely stressful ordeal and we're here, we're ready to go[.]"

The court confirmed that the defense had consistently sought trial and that the prosecution was responsible for the delays. The court then formally denied an adjournment:

> I've been on the bench for pushing 30 years, and this is not a common occurrence, I would agree with that.
>
> In considering it, I've indicated a lot of the concerns, the delays, the desire of the defense to push forward. They've never, the defense has never tried to delay the trial, that I can remember. They always wanted to go forward, and the Court has granted the prosecution the delays up until today. And I was willing, certainly, to . . . try to accommodate the 404(b) witness from where she was. There was even discussion about prosecutor paying, suggested wanted her to pay for her to bring in, Hawaii isn't that far away, but I guess there are whatever communications problems there may have been between the two of them. But that having been said, . . . I don't treat lightly the allegations here. Clearly, if these things happen, you have a child at the time, still a child, I guess, who is the victim, and the trauma involved in this thing is such that, you know, they're entitled to get justice, as the prosecutor says, and I'm cognizant of that and aware of that.
>
> I'm also cognizant of the fact that defendants have their right to get justice as well. While it's an important case to the victim, if the defense were to lose and

-3-

be found guilty on Count I here, he would be subject to a prison term where he could get up to life in prison or any term of years, but he would be required to serve at least 25 years before being eligible for parole. This is not a minor matter, so as much impact as it might have on the victim or victim's family or whatever, there's also a considerable impact it would have potentially on defendant and defendant's family, depending on how the case was ultimately resolved.

So the bottom line here is that the Court believes, for all the reasons indicated earlier, that I'm simply unwilling under the circumstances to grant the adjournment. I'm of the opinion that the case could go forward today. We are talking about a 404(b) witness. We're not talking about someone who observed any of the acts that occurred, as alleged. Simply, she could come in and talk about what may have happened to her in the past. The jury could evaluate that, I guess, if I were to allow it in, and even that hasn't been determined yet, because I haven't been able to have the hearing. But the bottom line is there's no reason that the prosecutor can't present the case, as is often times done when you have a child witness, even with a child witness where that child witness gives testimony.

In this particular instance I understand the victim is 13 years of age now and was alleged to have been nine at the time of the incidents that are alleged. So certainly that witness, or any other witness that might be available to the prosecution, could come in and testify about the facts and what happened, and the jury could determine that. The 404(b) evidence, if it were to be allowed in, would simply be, for lack of a better word, icing on the cake. It's not a required witness to present the case and get a decision from the jury.

So respectfully, . . . for all the reasons indicated, I'm simply unwilling to grant an adjournment today.

The court then inquired of the prosecutor, "Do you wish to present - - do you wish to go forward with the trial today . . . ? The prosecutor replied, "No, your Honor. At this time, your Honor, the People would be filing a dismissal or a nolle pross and requesting that the Court sign that and dismiss the matter without prejudice pending us finding [BQ], and we will immediately reissue the charge." Defense counsel protested, complaining that his client would be forced to post another bond or be incarcerated. Counsel expressed, "[W]e believe it's appropriate to dismiss this with prejudice because the prosecution hasn't exercised due diligence, and they could go forward today."

The court denied the motion for an adjournment and the motion for a *nolle prosequi*, reserving the question of whether dismissal would be with or without prejudice, explaining, "I'm simply denying the adjournment and denying the request for a nolle pross. It would be my intent that if the prosecution wanted to prosecute this case, they would go forward today."

BQ was located the next day.

The prosecution then filed a motion seeking a *nolle prosequi*. The court refused to sign it, and set the matter for a hearing. At the hearing, the prosecution urged that its decision to

refrain from going forward with the trial was a legitimate exercise of prosecutorial discretion. And according to the prosecutor, unless the *nolle prosequi* would be "unconstitutional, illegal, or ultra vires," the court was bound to approve it. "[D]eciding which witnesses to proceed with or not proceed with," the prosecutor continued, "is not an unconstitutional act . . . . It's not illegal or ultra vires," and therefore the court would abuse its discretion by refusing to sign the nolle prosequi order.

The court re-emphasized its belief that the "prosecutor could have proceeded," and that its decision to deny an adjournment was motivated by a desire to do justice on behalf of both sides. In a written opinion that followed the hearing, the court further described the rationales for its trio of decisions as follows:

> [W]hile the Court has no supervisory authority over the prosecution, it does have authority over its docket and in enforcement of the law and the court rules. Requirements for adjournments due to the absence of a witness or evidence are found in MCR 2.503(C). Under this rule, "[a] motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts. MCR 2.503(C)(1). Additionally, "[a]n adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence." MCR 2.503(C)(2). The Court of Appeals has also held that "[t]he power in a criminal case to grant or deny a continuance is within the sound discretion of the trial court." *People v Dowell*, 199 Mich App 554, 555[; 502 NW2d 757] (1993).

> In this case, the Court found adjournment was not proper. There was no showing that [BQ]'s testimony was material when it was not even clear if it was admissible at all. Additionally, the issue with the witness could have been brought to the Court's attention sooner and the Court was not convinced that the prosecution took all of the proper available measures to ensure the witness was available at trial. For these reasons, along with others stated on the record, the Court denied the request for an adjournment.

> The prosecutor's subsequent motion for nolle prosequi was not made because of any desire to discontinue or abandon the case. Rather, it was only made because of the denial of the motion to adjourn. That is, the motion for nolle prosequi was an admitted attempt to delay trial because the prosecution preferred to go to trial with a witness it had failed to secure and hoped that the witness could be available by the time the case made its way back through the system. It should also be noted that, unlike an adjournment, this method of delaying trial would have required defendant to post bond again and incur bond-related fees after refiling of the case.

> In these circumstances, the denial of the motion for nolle prosequi was not an interference with the prosecution's discretion. Rather, it was a rejection of the prosecution's attempt to unilaterally control the scheduling of court proceedings. Adjournments of the sort requested by the prosecution are controlled by MCR

2.503(C), and the prosecution did not show and still has not shown that an order of nolle prosequi can be used as a way to get around a ruling denying an adjournment.

For those reasons, the Court stands by its decisions to deny the motions of the prosecution. Furthermore, because the prosecution then refused to proceed and failed to present any evidence on the day of trial despite the Court's rulings, this case must be dismissed with prejudice. The Court understands the seriousness of this case and does not take any of these decisions lightly. However, the Court had made its decisions for reasons that were explained. Respectfully, it was not proper to refuse to proceed with this case on the scheduled day of trial because of disagreement with those decisions. Dismissal with prejudice is the only appropriate remedy.

The prosecution now appeals.

II

Three rulings are now at issue: the denial of an adjournment, the denial of a motion for nolle prosequi, and the dismissal with prejudice. We address each in turn.

A

We review a trial court's adjournment ruling for an abuse of discretion. *People v Jackson*, 467 Mich 272, 276; 650 NW2d 665 (2002); MCL 768.2. A court abuses its discretion when its decision falls outside the range of principled outcomes. *People v Musser*, 494 Mich 337, 348; 835 NW2d 319 (2013).

A motion for an adjournment or continuance must rest on good cause. MCR 2.503(B)(1); *Jackson*, 467 Mich at 276. MCR 2.503(C) governs a motion to adjourn arising from the unavailability of a witness:

(1) A motion to adjourn a proceeding because of the unavailability of a witness or evidence must be made as soon as possible after ascertaining the facts.

(2) An adjournment may be granted on the ground of unavailability of a witness or evidence only if the court finds that the evidence is material and that diligent efforts have been made to produce the witness or evidence.

(3) If the testimony or the evidence would be admissible in the proceeding, and the adverse party stipulates in writing or on the record that it is to be considered as actually given in the proceeding, there may be no adjournment unless the court deems an adjournment necessary.

The trial court determined that the prosecution had not exercised due diligence in locating BQ and arranging for her testimony at an evidentiary hearing; without the hearing, the admissibility of her testimony remained unknown. And because the prosecution could present the testimony of the complaining witness, the trial court observed, BQ's testimony was not "required."

The trial court did not abuse its discretion in making this determination. The prosecutor had named more than a dozen witnesses, including an expert, in support of its case. The prosecutor knew that BQ was missing well before the trial date, but did not seek an adjournment "as soon as possible after ascertaining the facts." MCR 2.503(C)(1). Instead the prosecution waited until the day of the trial to make its request, creating scheduling difficulties for the court and inconveniencing the defense, which had subpoenaed witnesses. Moreover, the record fails to establish that BQ's testimony was material to the case, as it had not been evaluated for relevance or prejudice. We find no abuse of discretion in the trial court's denial of an adjournment.

B

We turn next to the trial court's decision to deny a nolle prosequi order. In relevant part, MCL 767.29 provides:

> A prosecuting attorney shall not enter a nolle prosequi upon an indictment, or discontinue or abandon the indictment, without stating on the record the reasons for the discontinuance or abandonment and without the leave of the court having jurisdiction to try the offense charged, entered in its minutes.

This statute provides that the prosecutor must state on the record the reasons for seeking a *nolle prosequi* order and must also obtain leave of the court. *People v Glass (After Remand)*, 464 Mich 266, 278; 627 NW2d 261 (2001).

In deciding whether a prosecuting attorney acted properly in proposing to *nolle prosequi*, discontinue, or abandon a prosecution, the circuit judge must review the prosecutor's statement of reasons and the evidence filed in the case. *Genesee Co Prosecutor v Genesee Circuit Judge*, 391 Mich 115, 121; 215 NW2d 145 (1974). "Such review is a judicial review, searching the record to determine whether . . . the prosecutor's decision is in accord with the law, facts and reason of the matter." *Id*. A trial court may not substitute its judgment for that of the prosecuting attorney as if it were acting in a supervisory capacity. *Id*. We review the trial court's decision for an abuse of discretion. See *People v McCartney*, 72 Mich App 580, 589; 250 NW2d 135 (1976).

The prosecutor contends that the separation-of-powers doctrine shields a *nolle prosequi* decision from judicial veto unless entering the order would be unconstitutional, illegal, or ultra vires. We agree that entering a *nolle prosequi* ordinarily falls within the prosecutor's broad and independent discretion. But as the prosecutor concedes, its powers are not absolute. A *nolle prosequi* that violates the Constitution, constitutes an illegal act, or exceeds the prosecutor's authority should not be approved by the court.

The prosecutor lacked the authority to unilaterally derail defendant's trial after the court denied her request for an adjournment. The prosecutor's refusal to proceed with proofs was ultra

-7-

vires: beyond the prosecution's legal powers. Our Supreme Court has observed that "[e]ach branch of government has inherent power to preserve its constitutional authority." *Employees & Judge of Second Judicial Dist Court, Second Div v Hillsdale Co*, 423 Mich 705, 717; 378 NW2d 744 (1985). The Court emphasized that "an indispensable ingredient of the concept of coequal branches of government is that 'each branch must recognize and respect the limits on its own authority and the boundaries of the authority delegated to the other branches.' " *Id.*, quoting *United States v Will*, 449 US 200, 228; 101 S Ct 471; 66 L Ed 2d 392 (1980). Judicial authority inherently encompasses a trial court's control of its docket and the management of its courtroom. The prosecutor's objection to going forward with proofs did not empower her to step into the shoes of a judicial branch officer. Under the circumstances presented, the prosecutor lacked the legal authority to decline the court's invitation to proceed.

In *Genesee Co Prosecutor*, 391 Mich at 121, the Supreme Court observed that a circuit court "may reverse or revise [a prosecuting attorney's] decisions only if it appears on the record that they have abused the power confided to them." The Supreme Court found such an abuse in *Reagan*, 395 Mich 306. In *Reagan*, the Supreme Court held that a *nolle prosequi* was improperly granted by the circuit court because the prosecution exceeded its powers by exercising bad faith in seeking it.

*Reagan* arose from a deal between the prosecution and the defense that if the defendant passed a polygraph, the charges would be dismissed. *Id.* at 309-310. The defendant passed. Nevertheless, the prosecution submitted an order for *nolle prosequi* to the circuit court without advising the court of "the purportedly binding agreement of the prosecutor and defendant." *Id.* at 317. The defendant was tried and convicted. The Supreme Court reversed, holding that the prosecutor was bound by its agreement and that the defendant was prejudiced by the proceedings. The Court reasoned,

> The nature of the agreement should have been stated by the prosecutor on the record before the trial court. The trial court, in considering the prosecutor's request to nolle prosequi, should have exercised informed discretion in deciding whether the prosecution acted within its authority in seeking entry of an order of nolle prosequi. [*Id.* at 318.]

*Reagan* counsels that a trial court does not abuse its discretion in denying a *nolle prosequi* motion when it determines that a dismissal would fall outside the realm of properly exercised prosecutorial discretion[2]

---

[2] A governmental employee's entitlement to the protection of governmental immunity under MCL 691.1407(5) depends in part on whether the employee's acts are considered ultra vires. In that context, good faith is an essential element. See *Petipren v Jaskowski*, 494 Mich 190, 203; 833 NW2d 247 (2013). Analogously, good faith is one component of an act entitled to respect and deference as falling within a prosecutor's constitutional authority.

We draw additional support for this conclusion from federal caselaw interpreting FR Crim P 48(a). Like MCL 767.29, FR Crim P 48(a) requires leave of court before dismissal of an action: "The government may, with leave of court, dismiss an indictment, information, or complaint. The government may not dismiss the prosecution during trial without the defendant's consent." The United States Supreme Court has observed that the "principal object" of the leave-of-court requirement "is apparently to protect a defendant against prosecutorial harassment, e.g., charging, dismissing and recharging, when the Government moves to dismiss an indictment over the defendant's objection." *Rinaldi v United States*, 434 US 22, 30 n 15; 98 S Ct 81; 54 L Ed 2d 2017 (1977). "[T]he Rule has also been held to permit the court to deny a Government dismissal motion to which the defendant has consented if the motion is prompted by considerations clearly contrary to the public interest." *Id*. See also *United States v Smith*, 55 F3d 157, 159 (CA 4, 1995) ("The disposition of a government's motion to dismiss an indictment should be decided by determining whether the prosecutor acted in good faith at the time he moved for dismissal.").

Here, the trial court determined that the prosecutor sought a *nolle prosequi* order solely to avoid starting a scheduled trial that had previously been adjourned at the prosecutor's request. Under the unique circumstances of this case, we concur that the trial court did not abuse its discretion in denying the *nolle prosequi* motion. The prosecutor's refusal to present proofs undermined the court's inherent authority to manage its docket. Moreover, the trial court concluded that the prosecutor acted in bad faith, as BQ's absence did not impair the prosecutor's ability to proceed with its proofs. A *nolle prosequi* would also prejudice the defendant, the court reasoned, as he would have to post another bond or face incarceration. See *People v Curtis*, 389 Mich 698, 706; 209 NW2d 243 (1973) (noting that after a *nolle prosequi* order has been entered, the prosecution must "obtain a new indictment and begin proceedings anew if [it] wishe[s] to reinstate the original charge").

The abuse of discretion standard presumes a range of reasonable and principled outcomes. The trial court's refusal to approve a *nolle prosequi* falls within that range.

C

Lastly, we consider the propriety of the trial court's decision to dismiss the prosecution with prejudice. "Trial courts possess the inherent authority to sanction litigants and their counsel, including the right to dismiss an action." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006). We review a trial court's dismissal of a case as an exercise of this power, or in response to a failure to comply with its orders, for an abuse of discretion. *Id*.

In *Maldonado*, the Supreme Court observed that a court has a "fundamental interest in protecting its own integrity and that of the judicial process." *Id*. at 389 (quotation marks and citation omitted). The judiciary and the executive are coordinate branches of government. "It is also well settled that under our form of government the Constitution confers on the judicial department all the authority necessary to exercise its powers as a coordinate branch of government." *In re 1976 PA 267*, 400 Mich 660, 662-663; 255 NW2d 635 (1977). A court's inherent powers are not subject to interference or diminishment by the other branches of government, except by constitutional authority. *Id*. at 663.

-9-

The trial court ruled that "it was not proper to refuse to proceed with this case on the scheduled day of trial because of disagreement with" the adjournment and *nolle prosequi* decisions. This principled determination falls within the trial court's authority and its discretion.

We affirm.

/s/ Brock A. Swartzle
/s/ Elizabeth L. Gleicher
/s/ Michael J. Kelly