PEOPLE v WYNGAARD

Docket No. 111212. Argued December 9, 1999 (Calendar No. 7). Decided
July 20, 2000.

Raymond Wyngaard, while an inmate at the Kinross Correctional
Facility, admitted at a Department of Corrections administrative
hearing conducted before a hearing officer that he had knowingly
possessed marijuana. Months later, criminal proceedings were initi-
ated in the Chippewa Circuit Court. The defendant testified, stating
that he had not known that the box he was handed contained mari-
juana. After considering the evidence, the jury was unable to reach
a unanimous verdict. At a second trial before Nicholas J. Lambros,
J., the hearing officer who had presided over the defendant's disci-
plinary hearing testified that the defendant had admitted at the
hearing that he had knowingly been in possession of marijuana.
The testimony was introduced, not for impeachment or rebuttal
purposes, but as substantive evidence in the prosecutor's case in
chief. The second jury found the defendant guilty of being a pris-
oner in possession of contraband. The Court of Appeals, SAWYER, J.
(MARKMAN, J., concurring in part and dissenting in part; O'CONNELL,
P.J., dissenting), affirmed in part and remanded for further proceed-
ings. 226 Mich App 681 (1997) (Docket No. 182760). A few days
before oral argument in the Supreme Court, the appellee assistant
attorney general filed an emergency motion to supplement the
record, indicating that, in the course of preparing for oral argu-
ment, he had discovered that the major misconduct report form
that was used at the disciplinary hearing contained the notation:
"Your statement at this hearing will not be admissible in a criminal
trial on this matter except for purposes of impeachment or rebut-
tal." The assurance was made pursuant to *People v Carr*, 149 Mich
App 653 (1986), and the form was signed by prison officials and the
defendant. The defendant appeals.

In an opinion by Justice YOUNG, joined by Chief Justice WEAVER,
and Justices TAYLOR and CORRIGAN, the Supreme Court *held*:

Because the defendant was advised at the disciplinary hearing
that his statements would not be admissible against him at a subse-
quent criminal trial, and the statements in fact were later used
against him, elementary notions of due process require that his
conviction be reversed. Due process requires that the case be

remanded for a new trial from which the defendant's incriminating statements are to be excluded, except for purposes of impeachment or rebuttal.

1. As in *People v Gallego*, 430 Mich 443 (1988), due process principles require that the defendant's detrimental reliance be cured by excluding the statements he made at the disciplinary hearing, except for purposes of impeachment or rebuttal. While the defendant failed to object to the hearing officer's testimony, reversal is supported by *People v Carines*, 460 Mich 750 (1999), which held that the plain error rule applies to unpreserved claims of constitutional error. Under that rule, plain errors or defects affecting substantial rights may be addressed on appeal although they were not brought to the attention of the trial court. To avoid forfeiture of the error, the error must have occurred, must have been plain, and must have affected substantial rights. Reversal is warranted when the plain error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence.

2. In this case, a plain error occurred in that the state breached an agreement not to use the defendant's statements made at the disciplinary hearing against him in a subsequent criminal trial save for impeachment or rebuttal. The error affected the defendant's substantial rights to due process of law as required by both the federal and state constitutions. The defendant has easily met the burden of persuasion regarding prejudice. His first trial, without the error, resulted in a hung jury, whereas the second trial, which included as substantive evidence defendant's prior statements, resulted in his conviction. Therefore, the error apparently affected the outcome of the lower court proceedings. Finally, the error seriously affected the fairness, integrity, and public reputation of the proceedings, requiring reversal and remand for a new trial.

3. Although the validity of *Carr* is no longer squarely before the Supreme Court, in light of the fact that the Department of Corrections is bound to follow *Carr* by continuing to advise inmates that their statements will not be used against them as substantive evidence in a criminal proceeding, it will be virtually impossible for this issue to be directly presented to the Court, and, thus, the Court is obligated to do so in this case. The Fifth Amendment privilege against self-incrimination speaks only of compulsion, and is not concerned with moral and psychological pressures to confess emanating from sources other than official coercion. It does not preclude a witness from testifying voluntarily in matters that may incriminate him. While it extends to inmates involved in discipli-

nary proceedings, Michigan's prison disciplinary process does not place any direct penalty on an inmate's decision to exercise the Fifth Amendment privilege. An inmate at all times has the *choice* not to testify. The tactical decision that an inmate must make regarding whether to testify at a disciplinary hearing when his testimony might potentially be used against him in a subsequent criminal proceeding, while perhaps quite difficult, does not constitute "compulsion" under the Fifth Amendment. *Carr*'s holding to the contrary is overruled.

Reversed and remanded.

Justice CAVANAGH, joined by Justice KELLY, concurring in part and dissenting in part, stated that because the defendant was advised at the disciplinary hearing that his testimony would not be admissible against him at a subsequent criminal trial, and the testimony was in fact later used against him, elementary notions of due process require that his conviction be reversed, independent of any Fifth Amendment concerns.

This case consists of a narrow question: whether defendant's due process rights were violated when, in spite of an authorized promise, the prosecutor introduced disciplinary hearing testimony at his criminal trial. The issue in *Carr*, that the accused must be advised, before testifying at a disciplinary hearing, that his testimony will not be admissible against him at a subsequent criminal trial, save for impeachment or rebuttal, is not before the Court, and should not be reached. The majority criticizes the *Carr* Court for creating a rule of law and procedure, but creates in this case its own procedure for review because it fears that it otherwise may not get the opportunity to do so. In choosing to reach *Carr*, the majority also has an obligation to determine whether the protections of *Miranda* apply in a prison disciplinary setting. However, it opts to consider only the portions of *Carr* that lend themselves to its desired result. Prospectively its holding leaves no constitutional protections for inmates facing disciplinary hearings. It lets stand, without analysis, the *Carr* holding that *Miranda* does not apply, and refuses to answer whether the prison disciplinary hearing qualifies as a custodial interrogation requiring *Miranda* warnings.

Justice MARKMAN took no part in the decision of this case.

*Jennifer M. Granholm*, Attorney General, *Thomas L. Casey*, Solicitor General, *Farrell Elliott*, Prosecuting Attorney, and *Charles D. Hackney*, Assistant Attorney General, for the people.

*John Groves* for the defendant-appellant.

Amicus Curiae:

*Brian Mackie*, President, *John D. O'Hair*, Prosecuting Attorney, and *Timothy A. Baughman*, Chief, Research, Training and Appeals, for Prosecuting Attorneys Association of Michigan.

YOUNG, J. Defendant Wyngaard was convicted of being a prisoner in possession of contraband. MCL 800.281(4); MSA 28.1621(4). The Court of Appeals, in a split decision, affirmed in part, reversed in part, and remanded for further proceedings.[1] Defendant then appealed to this Court, arguing that the admission at trial of his guilty plea from a prior prison disciplinary hearing violated his Fifth Amendment right against compelled self-incrimination.

Before oral argument, we were apprised that the Attorney General had just discovered evidence that defendant had signed a Department of Corrections form informing that any statements he made at his disciplinary hearing would not be used in a subsequent criminal trial except for purposes of impeachment or rebuttal. This assurance was made pursuant to the Court of Appeals decision in *People v Carr*, 149 Mich App 653, 659; 386 NW2d 631 (1986). As explained below, although we now overrule *Carr*, we hold that due process requires that we remand this case for a new trial from which defendant's incriminating statements shall be excluded, except for purposes of impeachment or rebuttal.

---

[1] 226 Mich App 681; 575 NW2d 48 (1997).

I. FACTUAL AND PROCEDURAL BACKGROUND

At the time of the instant offense, defendant was an inmate at the Kinross Correctional Facility in Chippewa County. Acting on a tip, corrections officers searched defendant immediately after he was observed being handed a toothpaste box. The box was found to contain marijuana. A few days later, a Department of Corrections administrative hearing was conducted before a hearing officer regarding the matter. At the hearing, defendant admitted that he had knowingly possessed marijuana. He was punished in accordance with Department of Corrections guidelines.

Months later, criminal proceedings were initiated. Defendant testified, stating that he had not known that the box he was handed contained marijuana. After considering the evidence, the jury was unable to reach a unanimous verdict. At a subsequent trial, a new witness was produced. The prosecution presented the hearing officer who had presided over defendant's disciplinary hearing. He testified that defendant had admitted at the hearing that he had knowingly been in possession of marijuana. This testimony was introduced, not for impeachment or rebuttal purposes, but as substantive evidence in the prosecutor's case in chief. Defendant failed to object to this testimony. The second jury found defendant guilty.

A few days before oral argument in this Court, a representative of the Attorney General's office filed an emergency motion to supplement the record. We granted the motion. The assistant attorney general advised in the motion that, in the course of preparing

for oral argument, he had discovered the "Major Misconduct Report" form that was used at the disciplinary hearing. That form contained a notation that read as follows:

> Note: Your statement at this hearing will not be admissible in a criminal trial on this matter except for purposes of impeachment or rebuttal.

This form had been signed both by prison officials and by defendant.

### II. DEFENDANT'S DUE PROCESS RIGHTS

We originally granted leave in this case to consider the validity of the Court of Appeals decision in *Carr*, *supra* at 659, holding that

> any evidence derived from testimony at a [prison] disciplinary hearing is inadmissible at subsequent criminal proceedings on the underlying charge, save for impeachment or rebuttal, and the accused must be advised before testifying at the disciplinary hearing that his testimony will not be admissible against him at a subsequent criminal trial on the underlying offense.

Before addressing that issue, however, we first must consider whether defendant's due process rights were violated when, at his criminal trial, the prosecution introduced defendant's statements from the prior disciplinary hearing despite the contrary assurance made by prison officials.

We agree with Judge MARKMAN's opinion below that, because defendant was advised at the disciplinary hearing that his statements would not be admissible against him at a subsequent criminal trial, and those statements were in fact later used against him, ele-

mentary notions of due process[2] require that his conviction be reversed. 226 Mich App 695.

We have, on two occasions, addressed the enforceability of promises made by state officials in the criminal justice context. In *People v Reagan*, 395 Mich 306; 235 NW2d 581 (1975), the prosecutor agreed to dismiss the prosecution against the defendant if he passed a polygraph examination administered by the Michigan State Police. The defendant initially passed the examination, and the prosecutor prepared an order of nolle prosequi, which order was approved by the trial court. Subsequently, the prosecutor had doubts about the reliability of the test results and retained another expert who informed the prosecutor that the results could have been distorted if administered to a schizophrenic. The prosecution then filed a new complaint on the same charges. This Court reversed the defendant's conviction on the ground that the prosecutor gave "a pledge of public faith which became binding when the nolle prosequi order was approved by the trial judge." *Id.* at 309.[3]

*Reagan* might be read to suggest that all so-called "pledges of public faith" must be specifically enforced. However, we reject any such reliance on *Reagan* because, as we later observed in *People v Gallego*, 430 Mich 443, 451; 424 NW2d 470 (1988), the decision in *Reagan* "did not rest on constitutional

---

[2] The Fourteenth Amendment of the United States Constitution guarantees that no state shall deprive any person of "life, liberty, or property, without due process of law." Const 1963, art 1, § 17 provides the same protection.

[3] The *Reagan* Court did not define the term "pledge of public faith," explain its significance, or provide its jurisprudential origin. It did, however, reject contract law as a basis for enforcing such a "pledge." *Id.* at 314.

grounds." *Reagan* did not purport to hold that *due process* requires specific performance of all promises made in the criminal justice context.

We do, however, find guidance in our subsequent decision in *Gallego*. In that case, the defendant was arrested following a drug transaction involving an undercover Michigan State Police officer. However, the police failed to recover $33,000 that the undercover officer used to purchase the drugs from the defendant. The defendant subsequently entered into a written agreement with representatives of the state police and the Federal Drug Enforcement Agency (DEA) whereby defendant would return the $33,000 in exchange for the officers' agreement not to prosecute him for any state or federal drug offenses. After the officers retrieved the money, the defendant was released. However, the county prosecutor did not feel bound by the police agreement and subsequently charged the defendant with delivery of cocaine. *Id.* at 446-447.

The defendant in *Gallego* sought specific performance of the police agreement on the ground that he had surrendered his Fourth Amendment right against unreasonable search and seizure and his Fifth Amendment right against compelled self-incrimination in reliance on the agreement he made with the police. *Id.* at 456. Although we acknowledged the United States Supreme Court's recognition in *Santobello v New York*, 404 US 257; 92 S Ct 495; 30 L Ed 2d 427 (1971), and *Mabry v Johnson*, 467 US 504; 104 S Ct 2543; 81 L Ed 2d 437 (1984), that due process provided a right to relief for the violation of an authorized plea agreement, we denied the defendant his requested relief on two grounds. First, we concluded

that "the police lacked the authority to make a binding promise of immunity or not to prosecute." 430 Mich 452. Second, we recognized "the presence of an alternative remedy which essentially restores defendant to the position he enjoyed prior to making the agreement in question with the police." *Id.* at 455-456. In that regard, we concluded that suppression or exclusion of the written agreement and purchase money was an appropriate remedy *that cured the defendant's detrimental reliance. Id.* at 456.

*Gallego* did not address the precise issue presented here: What remedy must be afforded under due process principles when a defendant surrenders a constitutional right in reliance on an *authorized* agreement?[4] However, *Gallego* did recognize that, even in the context of authorized plea agreements, the United States Supreme Court has never held that the constitution compels specific performance. *Id.* at 450. Indeed, we can discern no basis under due process principles for a requirement that all authorized agreements be specifically enforced. Logic dictates that we should remedy a due process violation by attempting to cure the defendant's detrimental reliance. Accordingly, we apply the *Gallego* analysis here to conclude that, even if an agreement was authorized, due process requires only that the defendant's detrimental reliance be cured.

Here, prison officials promised defendant that any statements he made at the disciplinary hearing would not be used against him in a subsequent criminal proceeding except for purposes of impeachment or

---

[4] The agreement in question was authorized, indeed compelled, by the Court of Appeals decision in *Carr.*

rebuttal. After signing the agreement, defendant admitted that he knowingly possessed marijuana, thus partially surrendering his ability to later assert his Fifth Amendment privilege.[5] Defendant's right to due process was violated when his statements were later used against him as substantive evidence. We hold that due process principles require us to cure defendant's detrimental reliance by excluding defendant's statements made at the disciplinary hearing, except for purposes of impeachment or rebuttal.

While defendant failed to object to the hearing officer's testimony, reversal is supported by our decision in *People v Carines*, 460 Mich 750; 597 NW2d 130 (1999). In that case, this Court held that the plain error rule applies to unpreserved claims of constitutional error. *Id.* at 764. Under that rule, plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court. *Id.* at 763. To avoid forfeiture of the error, three requirements must be met: (1) error must have occurred, (2) the error was plain, that is, clear or obvious, and (3) the plain error affected substantial rights. *Id.* The third requirement usually requires a showing of prejudice, namely, that the error affected the outcome of the lower court proceedings. Finally, reversal is warranted when the plain error resulted in the conviction of an actually innocent defendant or when the error seriously affected the fairness, integrity, or public reputation of judicial proceedings, independent of the defendant's innocence. *Id.* at 763-764.

---

[5] Because defendant agreed that his statements could be used for purposes of impeachment or rebuttal, such use would not have violated the Fifth Amendment.

These requirements are fulfilled in this case. A plain error occurred in that the state breached an agreement not to use defendant's statements made at the disciplinary hearing against him in a subsequent criminal trial save for impeachment or rebuttal. As stated, this error affected defendant's substantial rights to due process of law as required by both the federal and state constitutions. Next, defendant has easily met the burden of persuasion regarding prejudice. His first trial, without the error, resulted in a hung jury. Whereas the second trial, which included as substantive evidence defendant's prior statements, resulted in his conviction. Therefore, the error apparently affected the outcome of the lower court proceedings. Finally, we exercise our discretion in deciding to reverse defendant's conviction. The error in this case—admitting defendant's statements as substantive evidence of guilt despite a contrary agreement upon which defendant detrimentally relied—fulfills the second prong of the *Carines* test for reversal in that it seriously affected the fairness, integrity, and public reputation of the proceedings. We therefore reverse the decision of the Court of Appeals and remand for a new trial. On remand, the prosecution may not introduce defendant's statements made at the disciplinary hearing as substantive evidence of guilt.

### III. *PEOPLE v CARR*

Given our decision to remand this case for a new trial, the validity of *Carr, supra,* is no longer squarely before us. However, in light of the fact that the Department of Corrections is bound to follow *Carr* by continuing to advise inmates that their statements will not be used against them as substantive evidence

in a criminal proceeding, it will be virtually impossible for this issue to be directly presented to this Court.[6] Accordingly, we are obligated to address it here.[7]

In *Carr, supra,* the Court of Appeals, having determined that *Miranda*[8] warnings do not apply in the context of a prison disciplinary hearing,[9] considered whether the Fifth Amendment was violated by what the Court believed to be a "Catch 22" situation in which prisoners

> can either testify at the prison disciplinary hearing and incriminate themselves or for[]go the right to offer exculpa-

---

[6] The dissent asserts that "[i]f this were the test for reaching issues, the United States Supreme Court would have revisited *Miranda* hundreds of times over . . . ." *Post* at 676. The dissent reasons that "police officers are 'bound' by that case to provide its warnings. Yet, somehow, *Miranda* violations continue to occur, providing several opportunities to visit the issues presented." *Id.* That argument would be more persuasive if the *Miranda* example was truly analogous to our action today. However, it clearly is not. As our decision in *People v Daoud,* 462 Mich 621; 614 NW2d 152 (2000), illustrates, simply reading a suspect his *Miranda* "rights" is but the tip of the proverbial iceberg. Indeed, the United States Supreme Court has been presented with multiple "opportunities" to revisit *Miranda* only because the "constitutional rule" promulgated in that decision, see *Dickerson v United States,* 530 US 428; 120 S Ct 2326; 147 L Ed 2d 405 (2000), is difficult to decipher and apply, not because police officers routinely decline to provide the *Miranda* warnings at all. In order for us to reach *Carr,* the Department of Corrections would have to defy the Court of Appeals decision in that case. Unlike the dissent, we will not presume that the department would engage in such lawlessness.

[7] The dissent asserts that this case "consists of a narrow question whether defendant's due process rights were violated . . . ." *Post* at 675. Surely the dissent recalls that we in fact originally granted leave in this case to address *Carr.* Thus, we admit to being puzzled at the dissent's claim that we have decided to address *Carr* only because we are somehow "dissatisfied" by the "narrow" issue concerning the violation of defendant's due process rights.

[8] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

[9] We decline in this case to reach or address the *Carr* Court's holding on this issue. Accordingly, we leave for another day the question of when, if ever, *Miranda* warnings apply in the prison setting.

tory or mitigating statements and face the potential penalties for prison misconduct based on evidence which they cannot refute or explain. [*Carr, supra* at 658-659.]

The Court reasoned that "if an inmate's statements at the disciplinary hearing can be used against him in a subsequent criminal trial, it is likely that such statements will be withheld from the administrative hearing examiner for fear of being used against the inmate at a later time." *Id.* at 659. This, the Court of Appeals determined, "constitutes an impermissible penalty for the exercise of the privilege against self-incrimination." *Id.* Therefore, the Court decided that it would "adopt" the following "procedure":

> [A]ny evidence derived from testimony at a disciplinary hearing is inadmissible at subsequent criminal proceedings on the underlying charge, save for impeachment or rebuttal, and the accused must be advised before testifying at the disciplinary hearing that his testimony will not be admissible against him at a subsequent criminal trial on the underlying offense. [*Id.*]

### A. THE FIFTH AMENDMENT PRIVILEGE

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."[10] This prohibition "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also

---

[10] Const 1963, art 1, § 17 likewise provides that "[n]o person shall be compelled in any criminal case to be a witness against himself . . . ." We confine our analysis to the Fifth Amendment because defendant has not argued that art 1, § 17 provides broader protections. Moreover, as we noted in *People v Cheatham*, 453 Mich 1, 10; 551 NW2d 355 (1996), "[t]he wording of the Michigan Constitution granting protection from compelled self-incrimination is identical to the Fifth Amendment protection."

'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *Minnesota v Murphy*, 465 US 420, 426; 104 S Ct 1136; 79 L Ed 2d 409 (1984). However, as the Fifth Amendment privilege speaks only of compulsion, it "is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" *Colorado v Connelly*, 479 US 157, 170; 107 S Ct 515; 93 L Ed 2d 473 (1986). "It does not preclude a witness from testifying voluntarily in matters which may incriminate him." *Murphy, supra* at 427.

### B. COMPELLED SELF-INCRIMINATION IN THE PRISON SETTING

There is no dispute that the Fifth Amendment privilege extends to inmates involved in disciplinary proceedings. Thus, as the Supreme Court explained in *Baxter v Palmigiano*, 425 US 308, 316; 96 S Ct 1551; 47 L Ed 2d 810 (1976), "if inmates are compelled in those proceedings to furnish testimonial evidence that might incriminate them in later criminal proceedings, they must be offered 'whatever immunity is required to supplant the privilege' . . . ."

As stated, the *Carr* Court believed that the so-called "Catch 22" choice faced by inmates in the prison discipline setting—either incriminate themselves or forgo the right to offer exculpatory or mitigating statements—"constitutes an impermissible penalty for the exercise of the privilege against self-incrimination." *Id.* at 659. We disagree with the *Carr* Court's analysis.

The United States Supreme Court has indeed held on more than one occasion that a *penalty* imposed on the exercise of the Fifth Amendment privilege creates a compulsion repugnant to the constitution. For example, in *Garrity v New Jersey*, 385 US 493; 87 S Ct 616; 17 L Ed 2d 562 (1967), several police officers were questioned by the Attorney General in connection with an investigation concerning the fixing of traffic tickets. Each officer was warned that refusal to answer would result in removal from office. Some of the answers given were used, over objections, in subsequent criminal prosecutions. *Id.* at 494-495. In reversing the defendants' convictions, the *Garrity* Court explained that "[t]he option to lose their means of livelihood or to pay the penalty of self-incrimination is the antithesis of free choice to speak out or remain silent." The Court held that the officers' statements "cannot be sustained as voluntary." *Id.* at 497-498. Thus, what *Garrity* and its progeny make clear is that a state " 'may not impose substantial penalties because a witness elects to exercise his Fifth Amendment right not to give incriminating testimony against himself.' " *Murphy, supra* at 434, quoting *Lefkowitz v Cunningham*, 431 US 801, 805; 97 S Ct 2132; 53 L Ed 2d 1 (1977).

Unlike the situation in *Garrity*, however, Michigan's prison disciplinary process does not place any direct penalty on an inmate's decision to exercise his Fifth Amendment privilege. The hearing officer's decision must be made on a preponderance of the evidence presented. MCL 791.252(k); MSA 28.2320(52)(k). An inmate at all times has the *choice* not to testify. We agree with Judge MARKMAN's opinion below that "[t]he tactical decision that an inmate

must make regarding whether to testify at a disciplinary hearing, when his testimony might potentially be used against him in a subsequent criminal proceeding, while perhaps quite difficult, does not constitute 'compulsion' under the Fifth Amendment." 226 Mich App 692-693. The *Carr* Court's holding to the contrary is overruled.[11]

IV. CONCLUSION

Before admitting at his disciplinary hearing that he knowingly possessed marijuana, defendant was promised that his statements would not be used against him in a subsequent criminal trial except for purposes of impeachment or rebuttal. Contrary to that agreement, defendant's incriminating statements were used against him as substantive evidence. We hold that elementary notions of due process require that defendant's conviction be reversed and the case remanded for a new trial. On remand, defendant's statements from his disciplinary hearing cannot be used against him as substantive evidence.

Finally, we hold that Michigan's prison disciplinary process does not penalize inmates for exercising their Fifth Amendment privilege. Instead, inmates have a free choice concerning whether to remain silent or provide statements at a disciplinary hearing. The contrary holding in *Carr* is overruled. Accordingly,

---

[11] Because we decline in this case to address *Miranda's* applicability in the prison setting, the dissent accuses us of leaving "no constitutional protections for these inmates from today forward." *Post* at 677. To the contrary, as we have already explained, the Fifth Amendment prohibits prison inmates from being compelled to incriminate themselves.

inmates facing disciplinary hearings should no longer be advised in accordance with *Carr*.

Reversed and remanded.

WEAVER, C.J., and TAYLOR, and CORRIGAN, JJ., concurred with YOUNG, J.

CAVANAGH, J. (*concurring in part and dissenting in part*). I concur in parts I and II of the majority opinion. However, the majority's overreaching to overrule *People v Carr*, 149 Mich App 653, 659; 386 NW2d 631 (1986), is yet another example of its judicial restraint. The majority recognizes, but finds as no impediment, that the issue in *Carr* is not before the Court. The instant case consists of a narrow question whether defendant's due process rights were violated when, in spite of an authorized promise, the prosecutor introduced disciplinary hearing testimony at his criminal trial. Not content to deal with this narrow issue, the majority reaches for an issue it finds more appealing, and one that allows the Court to chip away at *Carr*'s watered-down version of the elusive *Miranda*[1] ruling.

While feeling obligated to rid the Department of Corrections and our courts of the rule of *Carr*, the majority finds it unnecessary to determine the constitutional protections that must be afforded to prison inmates at disciplinary hearings. This so-called obligation arises, according to the majority, because prison officials are bound by *Carr*, therefore, this Court may never get the chance to review the issue. If this were

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Certainly to the dismay of some of my colleagues, *Miranda* was reaffirmed by the United States Supreme Court recently in *Dickerson v United States*, 530 US 428; 120 S Ct 2326; 147 L Ed 2d 405 (2000).

the test for reaching issues, the United States
Supreme Court would have revisited *Miranda* hun-
dreds of times over, for, police officers are "bound"
by that case to provide its warnings. Yet, somehow,
*Miranda* violations continue to occur, providing sev-
eral opportunities to visit the issues presented.[2]

The protections provided in *Carr* are not required
according to the majority. However, it provides no
alternative holding. In choosing to reach *Carr*, the
majority must also have an obligation to determine
whether the protections of *Miranda* apply in a prison
disciplinary setting. However, the majority opts to
consider only the portions of *Carr* that easily lend to
its desired result.

*Carr* held that the Fifth Amendment is violated
when an impermissible penalty for the exercise of the
privilege is attached. 149 Mich App 659. The penalty

---

[2] The majority distinguishes the instant case because there are a variety
of complex *Miranda* violations. The majority misses the point. Police,
prosecutors, private citizens, state agencies, and private agencies are all
bound to follow the law whether it be our case law or statutory law. The
majority's faith that the Department of Corrections will not engage in
"lawlessness" is naive at best. In this term alone, the Department of Cor-
rections engaged in such lawlessness, allowing this Court to reach and
determine issues squarely before us. See *Blank v Dep't of Corrections*, 462
Mich 103, 108; 611 NW2d 530 (2000), wherein our Legislature required, by
statute, that administrative agencies obtain approval of a joint committee
or the Legislature before enacting new administrative rules. This Court
was previously asked to determine the constitutionality of the statute, but
declined the invitation stating: "The Court stands ready to examine care-
fully, and to resolve expeditiously, any controversy that comes to it out of
application of 1977 PA 108 in a factual setting." *Request for Advisory
Opinion on Constitutionality of 1977 PA 108*, 402 Mich 83, 87; 260 NW2d
436 (1977). In *Blank*, the Department of Corrections knowingly "defied"
this law by adopting its proposed rules without the statutorily required
approval. *Id.*, p 110. As a result, the constitutionality of the statute was
before this Court. Therefore, I too am "puzzled" by the majority's faith in
the Department of Corrections' supposed adherence to Michigan law, and
its fear that the issues presented in *Carr* may be virtually impossible to
address.

involves the inmate being forced to forgo a valuable defense at the disciplinary hearing. *Id.* Therefore, it provided that the accused must be advised, before testifying at the hearing, that his testimony will not be admissible against him at a subsequent criminal trial, save for impeachment or rebuttal. *Id.* The majority rejects this rule because there is no "compulsion" to testify, instead it is simply a difficult choice for an inmate. *Ante*, p 674. Therefore, this protection is no longer required. The majority's holding leaves no constitutional protections for these inmates from today forward. It lets stand, without analysis, the *Carr* holding that *Miranda* does not apply and refuses to answer whether the prison disciplinary hearing qualifies as a "custodial interrogation" requiring *Miranda* warnings. *Ante*, p 670, n 9.

The majority criticizes the *Carr* Court for creating a rule of law and procedure. Is it not ironic that the majority today creates its own procedure for reviewing cases? From today forward, issues may be reached and decided by this Court when it fears that it otherwise may not get the opportunity soon enough. Because the issues presented in *Carr* are not before this Court, I would not reach them and would decide this case only on the basis of the issue presented.

The issue presented is whether defendant's due process rights were violated when, in spite of an authorized promise, the prosecutor introduced defendant's disciplinary hearing testimony at his criminal trial. I agree that because defendant was advised at the disciplinary hearing that his testimony would not be admissible against him at a subsequent criminal trial, and the testimony was in fact later used

against him, elementary notions of due process require that his conviction be reversed, independent of any Fifth Amendment concerns.

Kelly, J., concurred with Cavanagh, J.

Markman, J., took no part in the decision of this case.