*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* CONDE, Minors.

UNPUBLISHED
August 13, 2019

No. 347105
Ingham Circuit Court
Family Division
LC No. 17-000973-NA
          17-000974-NA
          17-000975-NA
          17-000976-NA
          17-000977-NA

Before: CAVANAGH, P.J., and STEPHENS and O'BRIEN, JJ.

PER CURIAM.

Respondent-father appeals as of right the trial court's order terminating his parental rights to his five minor children under MCL 712A.19b(3)(c)(*i*) (conditions leading to adjudication continue to exist), (g) (failure to provide proper care or custody), (j) (reasonable likelihood of harm if returned to parent), and (k)(*iii*) (battering, torture, or other severe physical abuse).[1] We affirm.

## I. BACKGROUND

In June 2017, the Department of Health and Human Services (DHHS) took the children into protective custody on the basis of domestic violence in the home and the children's maltreatment. Forensic interviews of the children and inspections of the home revealed that the children had witnessed respondent place a gun to his head and place a gun to their mother's head. Additionally, it was discovered that the children were locked in the dark for extended periods without food, water, or access to the bathroom. The children's windows had been boarded, and the bedrooms were unsanitary with evidence of feces throughout. The children created holes in

---

[1] The same order also terminated the parental rights of respondent-mother. However, she is not a party to this appeal.

the walls exposing wires, in hopes of escape or having food and water snuck to them by a sibling.

Respondent eventually entered a no-contest plea to the allegations that the children were locked in their rooms for extended periods of time without food, water, or access to the bathroom. At the time of removal, DHHS identified respondent's barriers to reunification as immaturity, parenting skills, emotional stability, and domestic violence. He was ordered to undergo a psychological evaluation, which ultimately determined that respondent had "an elevated Lie Scale" and suggested "a tendency to deny and minimize common problems and further suggests a lack of insight."

Respondent was referred to and completed both a parenting class and a domestic violence course. Respondent was also referred to individual counseling and attended eight sessions. However, services were interrupted when respondent was charged with child abuse and unlawful imprisonment of the children. The caseworker sought termination of respondent's parental rights because of the significant trauma experienced by the children and the behavioral issues they were exhibiting while in care as a result of that trauma.

At the time of the termination hearing, all the children were receiving psychiatric care. The psychiatrist and therapists testified regarding the children's various mental-health diagnoses, the trauma that the children experienced, and their fears of returning home. Their opinions were unanimous that returning the children to respondent would be detrimental to the children's mental and emotional well-being. The evidence also indicated that the children's medical, dental, and educational needs had been neglected for several years. The Children's Protective Services worker testified concerning the level of domestic violence in the home admitted by the mother and witnessed by the children. Respondent elected to exercise his Fifth Amendment right against self-incrimination and did not testify. Ultimately, the trial court terminated respondent's parental rights.

## II. STANDARD OF REVIEW

On appeal, respondent raises only one issue. He argues that the trial court violated his Fifth Amendment right against self-incrimination because he believes he was "punished" for his lack of insight as to why the children were brought into care and the only way he could have expressed insight would have been by admitting that he was responsible for child abuse.

We review constitutional questions de novo. *In re AMAC*, 269 Mich App 533, 536; 711 NW2d 426 (2006). "Whether a party has been afforded due process is a question of law, subject to review de novo." *In re Contempt of Henry*, 282 Mich App 656, 668; 765 NW2d 44 (2009).

## III. ANALYSIS

The Fifth Amendment provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V. The Fifth Amendment applies to the states through the operation of the Fourteenth Amendment. *People v Cheatham*, 453 Mich 1, 9; 551 NW2d 355 (1996), and appears verbatim in the Michigan Constitution, Const 1963, art 1, § 17. This prohibition "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to

him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.' " *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000), quoting *Minnesota v Murphy*, 465 US 420, 426; 104 S Ct 1136; 79 L Ed 409 (1984).

"[T]his Court recognize[s] two interrelated requirements for a Fifth Amendment violation: compulsion, i.e., evidence that a person is unable to remain silent unless he chooses to speak in the unfettered exercise of his own will, that is grounded on a penalty exacted for a refusal to testify." *In re Blakeman*, 326 Mich App 318, 333; 926 NW2d 326 (2018) (citation and quotation marks omitted). In *Blakeman*, this Court explained that the Fifth Amendment extends to termination proceedings when "an inculpatory statement by [the] respondent could be used in the future" for the purpose of prosecution. *Id.* at 333-334. The *Blakeman* panel explained that a respondent may not be compelled to incriminate himself and must be afforded the protections under the Fifth Amendment throughout the child protection proceedings. *Id*. at 331. Further, this Court concluded that requiring a respondent to confess to an act of criminal child abuse as a condition of reunification violated that respondent's constitutional right against compelled self-incrimination. *Id*.

Respondent posits that the circumstances surrounding his no-contest plea and termination of his parental rights in this matter are similar to those of *Blakeman.* In *Blakeman*, the respondent and his wife had four children, and the respondent's wife occasionally babysat an unrelated toddler. *Id*. at 321. During one of these occasions, the respondent's wife left to run an errand, and when she returned, the toddler was unresponsive. *Id*. Ultimately, physicians diagnosed the toddler with a life-threatening skull fracture that they attributed to nonaccidental trauma. *Id*. at 322-323. At the adjudicative bench trial, the respondent was informed of his right against self-incrimination, but he testified and maintained his innocence. *Id*. at 322. Nonetheless, the trial court found that the respondent was responsible for the injury, assumed jurisdiction of the children, and ordered the respondent to participate in a treatment plan. *Id*.. The respondent complied with and benefited from the services offered, but the trial court refused to permit reunification because the respondent had not admitted responsibility for the toddler's injuries. *Id*. at 325-328. "[The] respondent was given an extreme and detrimental choice— admit to the child abuse at therapy, which could be used in future criminal proceedings—or continue to be separated from his children and eventually lose his parental rights." *Id*. at 336. In an interlocutory appeal, the respondent challenged a dispositional order that prohibited him from residing in the family home with his wife and four children. *Id*. at 320. As noted above, this Court explained that the respondent could not be compelled to incriminate himself and must be afforded the protections under the Fifth Amendment throughout the child protection proceedings. *Id*. at 339. Further, this Court held that, by requiring the respondent to confess to an act of criminal child abuse as a condition of reunification, the trial court violated his constitutional right against compelled self-incrimination. *Id.*

The circumstances in this case are distinguishable from *Blakeman*. In this case, respondent voluntarily and knowingly pleaded no-contest to the allegations in the petition that the children were locked in their rooms for long periods of time without food, water, or access to the bathroom. A voluntary and knowing no-contest plea "constitutes a waiver of several constitutional rights, including the privilege against compulsory self-incrimination, the right to a trial by jury, and the right to confront one's accusers." *People v Cole*, 491 Mich 325, 332; 817

NW2d 497 (2012) (citations omitted). The record also reflects that respondent chose to exercise his Fifth Amendment right against self-incrimination at the termination hearing. Indeed, the trial court judge specifically reminded respondent and his counsel that respondent had the right to assert his Fifth Amendment right against self-incrimination at trial. Accordingly, the record reflects that respondent was not compelled to answer any questions that required him to incriminate himself during the termination hearing. Further, the record reflects that throughout the proceedings in this case the trial court did nothing to compel respondent to admit that he had abused his children, nor did the trial court condition reunification or its best-interest ruling on respondent's admissions that he caused injury to his children. Accordingly, on this record, there is no evidence that respondent was compelled to testify in violation of his Fifth Amendment rights.

Nonetheless, respondent posits that he was "punished" for exercising his Fifth Amendment rights by having his parental rights to the children terminated. Respondent argues that the caseworker's testimony that he was not benefitting from services and the trial court's finding that he lacked insight both related to his failure to admit to abusing the children. We find no support for this contention in the record. The caseworker's testimony was based on information received from respondent's psychological evaluation that while respondent acknowledged a long-standing history of abuse and neglect behaviors, he lacked insight into the potential impact these events may have had on the children. The trial court's finding that respondent lacked insight was related to its finding that the conditions which brought the children into care had not been rectified. The court then specifically noted respondent's failure to complete the case service plan or benefit from services. Throughout the course of the case, respondent admitted that he and the mother physically and medically neglected the children. The court was not looking for an admission from respondent, but rather some enlightenment as to how what the children experienced had traumatized them and was detrimental to their physical, mental, and emotional well-being. The record does not reflect that the trial court pitted respondent's choice to exercise his Fifth Amendment right against self-incrimination against reunification with the children. Rather, the record supports a conclusion that despite respondent's exercise of his Fifth Amendment right against self-incrimination, sufficient evidence existed to support the termination of respondent's parental rights.[2]

---

[2] We note that respondent does not challenge the statutory grounds for termination of his parental rights. Thus, any challenge to the statutory grounds is abandoned, and, for purposes of this decision, this Court may assume that the trial court did not clearly err in finding that there was clear and convincing evidence to support a statutory ground for termination. See *In re JS & SM*, 231 Mich App 92, 98-99; 585 NW2d 326 (1999) (noting that the respondent did not challenge the statutory grounds, explaining that "[t]he failure to brief the merits of an allegation of error is deemed an abandonment of an issue," and assuming that the trial court did not clearly err in finding clear and convincing evidence of the statutory grounds for termination), overruled in part on other grounds by *In re Trejo*, 462 Mich 341, 353; 612 NW2d 407 (2000).

Affirmed.

/s/ Mark J. Cavanagh
/s/ Cynthia Diane Stephens
/s/ Colleen A. O'Brien