*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* ANDERSON/ANDERSON-WRIGHT/
WRIGHT-ANDERSON, Minors.

UNPUBLISHED
February 03, 2026
10:13 AM

No. 375682
Wayne Circuit Court
Family Division
LC No. 2024-000806-NA

Before: BORRELLO, P.J., and MARIANI and TREBILCOCK, JJ.

PER CURIAM.

Respondent-father appeals as of right the order terminating his parental rights to LDA, JEWA, JRWA, and DAW under MCL 712A.19b(3)(b)(*i*) (parent abused child), (b)(*ii*) (parent failed to prevent abuse), (j) (child would likely be harmed if returned to parent), and (k)(*iii*) (abuse included battery, torture, or other serious abuse). For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Emergency Medical Services arrived at Children's Hospital of Michigan on the morning of March 7, 2024, with DAW's twin brother, XLAW, who appeared "severely malnourished." The five-week-old infant, only 35 days old, had eyes that were "sunken in" and "possible sustained bruising to the skull area." He was pronounced dead that morning.

The Detroit Child Abuse Unit was notified, and Children's Protective Services (CPS) opened an investigation within 24 hours of the discovery of XLAW's condition. As a result of XLAW's death, physical abuse exams were conducted on the twin boys that same afternoon. The examinations revealed that both infants were malnourished. XLAW had sustained a bilateral subdural hematoma (bleeding on both sides of the brain) and bilateral diastatic parietal bone fractures (splits in the parietal bones of the skull), both of which were deemed "highly suggestive of abusive head trauma." In light of the apparent physical abuse and medical neglect of the twins, petitioner, the Department of Health and Human Services (DHHS), filed a petition to terminate the parental rights of both parents.

-1-

In lieu of proceeding to an adjudication trial, respondents entered no-contest pleas to both jurisdictional and statutory grounds for termination predicated upon the Child Protective Services investigation report. By stipulating to these grounds, respondents effectively converted the proceedings from an adjudicatory phase to a dispositional best-interest determination under MCL 712A.19b(5). To inform its best-interest analysis, the trial court ordered a dispositional evaluation through the Clinic for Child Study, which conducted observational assessments of parent-child interactions. The clinic's consultation with the assigned foster-care specialist revealed that minors LDA and JRWA had been placed jointly with their maternal grandmother and two maternal aunts in a single household holding a licensed foster-care designation. This placement afforded access to formalized support networks, including social services coordination and child welfare oversight. Conversely, minors DAW and JEWA resided with an adult paternal half-sibling and that individual's mother in an unlicensed placement, though one proximate to educational and medical service providers.

During the clinical evaluation, respondent-father was queried regarding his understanding of the precipitating circumstances underlying CPS and DHHS intervention. Respondent-father attributed agency involvement to the fact that his son "passed away in the home," concluding that authorities "feel like we endangered our kids." When asked to identify the party responsible for the death of minor XLAW, respondent-father declined attribution, stating he was "not pointing the finger at nobody." Regarding prospective behavioral modifications to prevent future protective services intervention, respondent-father indicated his intention to "[s]pend more time focused on my kids than being a workaholic" and to "[a]sk for help when I need it" rather than "let my pride get in the way of asking for help."

In her dispositional assessment, the clinician observed that respondent-father demonstrated avoidance of "any responsibility for the reasons which lead [sic] to CPS and Court involvement." The clinician opined that respondent-father's failure to acknowledge culpability for the death of minor XLAW "increases the likelihood that similar situations could occur in the future," thereby presenting ongoing risk to the surviving minors. The clinician characterized as "concerning and disturbing" the factual inconsistency between the decedent's documented emaciated and malnourished condition at time of death and respondent-father's representation that the child had appeared healthy twenty-four hours prior. This discrepancy, in the clinician's professional judgment, evidenced "a failure to recognize the depth of his child's condition and an inability to properly care for a child." Because respondent-father's proposed corrective measures failed to address the substantiated physical neglect and abuse, the clinician recommended against reunification and advised termination of parental rights pursuant to MCL 712A.19b(3)(g) on grounds of failure to provide proper care and custody.

During the dispositional phase of the termination proceedings, petitioner presented testimony from two witnesses: the assigned foster-care caseworker and the CPS investigator. When petitioner commenced examination of the CPS investigator concerning the decedent's medical records, counsel for respondent-mother interposed an objection asserting that such evidence constituted inadmissible cumulative testimony given respondents' stipulation to the factual predicate contained within the CPS investigation report. Defense counsel advanced facially inconsistent grounds, contending first that the medical documentation was merely duplicative and lacked probative value, then asserting that introduction of this ostensibly non-novel evidence

constituted improper surprise prejudicial to respondents' ability to mount an adequate defense. Counsel further argued that this line of examination bore no rational nexus to the statutory best-interest determination under MCL 712A.19b(5). Counsel concluded by asserting that such testimonial "surprises" effected a violation of respondents' procedural due process rights under the Fourteenth Amendment.

The referee framed the dispositive issue as follows: "Did this child die under unusual circumstances that would somehow eliminate or provide that there is no harm to the other children in the future?" The referee resolved this question in the negative, finding that "[t]here seems to be a disconnect between the parents and what they're observing . . . and what they're able to comprehend." The referee determined that respondents' failure to articulate a concrete remedial plan to prevent future DHHS intervention was fundamentally incompatible with the minors' statutory interest in permanency and stability, as the children required custodians "who are able to comprehend and understand their needs on a long-term, day-to-day basis." Applying the preponderance-of-the-evidence standard mandated by MCL 712A.19b(5), the referee concluded that termination of respondents' parental rights served the best interests of the minor children. The trial court adopted the referee's recommendation in its entirety and entered an order terminating respondents' parental rights.

## II.  STANDARDS OF REVIEW

"Whether child protective proceedings complied with a parent's right to procedural due process presents a question of constitutional law, which we review de novo." *In re Sanders*, 495 Mich 394, 403-404; 852 NW2d 524 (2014).

A trial court's decision regarding the child's best interests is reviewed for clear error.  MCR 3.977(k); *In re Johnson*, 305 Mich App 328, 335; 825 NW2d 224 (2014).  A finding is clearly erroneous if, "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made." *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009) (quotation marks and citation omitted).  For this Court to find clear error, a decision must be "more than just maybe or probably wrong." *Id.*  In applying this standard of review, deference is given to the special opportunity of the trial court to judge the credibility of the witnesses who appear before it.  *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

## III.  ANALYSIS

Respondent-father raises two challenges on appeal. First, he contends the trial court violated his procedural due process rights under the Fourteenth Amendment by admitting witness testimony at the dispositional hearing that exceeded the factual basis underlying his no-contest plea as set forth in the CPS investigation report. Second, respondent-father asserts the trial court committed reversible error by failing to articulate sufficient factual findings in support of its best-interest determination, particularly with respect to relative placement. We find both arguments unavailing and affirm.

### A.  DUE PROCESS DURING TERMINATION PROCEEDINGS

The Due Process Clause requires adequate notice and a meaningful opportunity to be heard before an impartial tribunal. *In re Rood*, 483 Mich 73, 92; 763 NW2d 587 (2009) (opinion by Corrigan, J.). "In Michigan, procedures to ensure due process to a parent facing removal of his child from the home or termination of his parental rights are set forth by statute, court rule, [and] DHS policies and procedures." *Id*. at 93. MCR 3.977 governs procedural requirements for termination proceedings. MCR 3.977(C) incorporates by reference the notice requirements set forth in MCR 3.920(B)(3), which provides:

> The summons must direct the person to whom it is addressed to appear at a time and place specified by the court and must:
> (a) identify the nature of hearing;
> (b) explain the right to an attorney and the right to trial by judge or jury, including, where appropriate, that there is no right to a jury at a termination hearing;
> (c) if the summons is for a child protective proceeding, include a notice that the hearings could result in termination of parental rights; and
> (d) have a copy of the petition attached. The confidential case inventory required by MCR 3.931(A) and MCR 3.961(A) shall not be served on any party.

The notice provisions of MCR 3.920(B)(3) satisfied respondent's procedural due process rights. Respondent-father received adequate notice and availed himself of the opportunity to be heard: he appeared at the dispositional hearing before the referee, was represented by counsel who received the dispositional report and interposed no objection to its admission subject to cross-examination, and conducted thorough cross-examination of petitioner's witnesses through counsel. These procedures satisfied the constitutional requirements under *Mathews v. Eldridge*, 424 US 319; 96 S Ct 893; 47 L Ed 2d 18 (1976). Respondent-father's assertion that admission of witness testimony rendered him "unable to prepare for the evidence presented after his no contest plea" is without merit.

The Fifth Amendment privilege against self-incrimination provides that "[n]o person . . . shall be compelled in any criminal case to be a witness against himself." US Const, Am V. This guarantee is applicable to the states through incorporation under the Fourteenth Amendment. *People v Cheatham*, 453 Mich 1, 9; 551 NW2d 355 (1996); see also Const 1963, art 1, § 17. The privilege "not only permits a person to refuse to testify against himself at a criminal trial in which he is a defendant, but also 'privileges him not to answer official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.'" *People v Wyngaard*, 462 Mich 659, 671-672; 614 NW2d 143 (2000), quoting *Minnesota v Murphy*, 465 US 420, 426; 104 S Ct 1136; 79 L Ed 2d 409 (1984).

"[T]his Court recognize[s] two interrelated requirements for a Fifth Amendment violation: compulsion, i.e., evidence that a person is unable to remain silent unless he chooses to speak in the unfettered exercise of his own will, that is grounded on a penalty exacted for a refusal to testify." *In re Blakeman*, 326 Mich App 318, 333; 926 NW2d 326 (2018) (quotation marks and citation omitted). In *Blakeman*, this Court held that Fifth Amendment protections extend to parental-rights termination proceedings where "an inculpatory statement by respondent could be used in the future" for prosecutorial purposes. *Id*. at 332-333. The privilege encompasses any testimony "having even a possible tendency to incriminate." *People v Lawton*, 196 Mich App 341,

346; 492 NW2d 810 (1992), citing *Hoffman v United States*, 341 US 479; 71 S Ct 814; 95 L Ed 1118 (1951). The privilege may be invoked notwithstanding the absence of pending or imminent criminal proceedings. *People v Guy*, 121 Mich App 592, 609-610; 329 NW2d 435 (1982).

Here, respondent-father has failed to establish the requisite element of compulsion necessary to demonstrate a violation of his Fifth Amendment privilege against self-incrimination. In *Blakeman*, respondent waived his Fifth Amendment privilege during the adjudicative phase and testified that he bore no responsibility for his toddler's injuries. *Blakeman*, 326 Mich App at 334. The trial court nevertheless found by a preponderance of the evidence that respondent caused the injuries. *Id*. Subsequently, at a dispositional review hearing, the trial court imposed a coercive choice: (1) retract his claim of innocence, admit culpability in therapy as a service-plan prerequisite, and thereby expose himself to criminal liability; or (2) maintain his innocence and face termination of parental rights as to his four children. *Id*. at 335. "[R]espondent chose the former, . . . .[but] any right to remain silent was no longer unfettered, and there was sufficient compulsion to be a witness against himself." *Id*. at 335-336.

Respondent-father confronted no analogous coercive choice. Indeed, respondent-father's appellate brief does not advance such a claim, asserting merely that "the additional evidence allowed in by the court was not best[-]interest testimony but rather inflammatory allegations that went beyond the agreement of the parties." Even assuming arguendo, the inflammatory character of the witness testimony, such testimony alone is insufficient to implicate the privilege against self-incrimination. Compulsion is an essential element of a Fifth Amendment violation, and the record is devoid of evidence that the trial court imposed any condition linking preservation of parental rights to an inculpatory admission that would expose respondent-father to criminal liability.

Moreover, the record demonstrates that the trial court did not rely on the allegedly inflammatory witness testimony in rendering its best-interest determination. Rather, the court predicated its analysis on two documentary sources. First, the CPS investigation report—which supplied the factual predicate for respondent-father's no-contest plea—established that his infant son died from malnourishment while in his care. Second, respondent-father's clinical interview with court-ordered evaluators tasked with formulating a best-interest recommendation revealed that respondent-father demonstrated an inability to comprehend or acknowledge the cause of his son's death and failed to articulate a concrete plan to prevent future CPS involvement. The trial court concluded that these deficits in insight and protective capacity posed a substantial risk to respondent-father's four similarly situated children, rendering termination consonant with their best interests. Because the record is devoid of evidence that respondent-father confronted a *Blakeman*-type coercive choice, the dispositional testimony did not implicate his Fifth Amendment privilege against self-incrimination.

Respondent-father's contention that the dispositional testimony violated his confrontation rights is likewise without merit. While procedural due process "often requires confrontation and cross-examination, [these] are not absolute requirements." *In re Brock*, 442 Mich 101, 109; 499 NW2d 752 (1993). Our Supreme Court has held "that the Sixth Amendment right of confrontation does not apply" in child-protective proceedings. *Id*. at 108. In any event, respondent-father, through counsel, exercised his right to cross-examine both witnesses petitioner called at the

dispositional hearing. Accordingly, respondent-father's arguments regarding his right of confrontation are devoid of merit.

## B. FINDINGS OF FACT AND CONCLUSIONS OF LAW AT THE BEST-INTEREST HEARING

"In Michigan, child protective proceedings comprise two phases: the adjudicative phase and the dispositional phase." *In re Sanders*, 495 Mich at 404. During the adjudicative phase, petitioner bears the burden of establishing by clear and convincing evidence at least one statutory ground for termination under MCL 712A.19b(3). *In re Keillor*, 325 Mich App 80, 85; 923 NW2d 617 (2018). Upon satisfaction of this burden, the trial court proceeds to the dispositional phase to determine whether termination serves the child's best interests. *Id*. at 93. "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App at 733.

"The trial court should weigh all the evidence available to determine the [child's] best interests." *In re White*, 303 Mich App 701, 713; 846 NW2d 61 (2014). When weighing the available evidence to determine the best interests of the child, the focus should be on the child, rather than the parent. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). Factors that a court may consider include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (citations omitted). "The trial court may also consider a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App at 714.

MCL 712A.19b(1) requires the trial court to state on the record or in writing its findings of fact and conclusions of law with respect to whether parental rights should be terminated. *In re Boshell/Shelton*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 371973); slip op at 8. See also MCR 3.977(I)(1). The trial court's findings need not be exhaustive; "brief, definite, and pertinent findings or conclusions on contested matters are sufficient." MCR 3.977(I)(1). See also *In re Baham*, 331 Mich App 737, 752; 954 NW2d 529 (2020).

The trial court articulated adequate findings of fact and conclusions of law both on the record at the best-interest hearing and in the written order terminating respondent-father's parental rights. At the best-interest hearing, the referee found that respondent-father's inability to accept responsibility for or comprehend the circumstances leading to the death of his infant child demonstrated his incapacity to provide day-to-day care for his four similarly situated children. The referee concluded that the preponderance of the evidence supported termination of respondent-father's parental rights as being in the children's best interests. The trial court's written order incorporated these findings and conclusions, further noting that the children's need for permanency and stability was compromised by respondent-father's failure to provide adequate nutrition necessary for growth and development. Accordingly, the trial court satisfied its obligation to make sufficient findings of fact to support termination of respondent-father's parental rights, and the trial court did not err in terminating respondent-father's parental rights on the basis of those findings.

## C.  RELATIVE PLACEMENT

Because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," relative placement at the time termination proceedings conclude constitutes a mandatory best-interest factor. *In re Mason*, 486 Mich 142, 164; 782 NW2d 747 (2010). A trial court's failure to explicitly address relative placement renders the factual record inadequate to support a best-interest determination and mandates reversal. *In re Olive/Metts*, 297 Mich App at 43.

Here, respondent-father argues that the trial court erred by failing to consider relative placement when making its best-interest determination.  However, the record evidence belies his claim.  The record demonstrates that the trial court addressed relative placement during the dispositional hearing and explicitly incorporated it into its findings and conclusions of law. The trial court twice discussed the issue, ultimately characterizing adoption by relatives as a relevant "consideration," stating: "We have a family member who is willing to adopt as a consideration here." The written termination order referenced the CPS investigator's testimony regarding current relative placement and twice cited the foster-care worker's testimony concerning the relatives' willingness to adopt. The record establishes that the trial court satisfied its obligation to make specific findings regarding relative placement. Reversal on this basis is therefore unwarranted.

Affirmed.

/s/ Stephen L. Borrello
/s/ Philip P. Mariani
/s/ Christopher M. Trebilcock