*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

       Plaintiff-Appellee,

v

KYLE ANTHONY YOUNG,

       Defendant-Appellant.

UNPUBLISHED
September 19, 2024

No. 367234
Monroe Circuit Court
LC No. 2022-247002-FH

Before: LETICA, P.J., and GARRETT and FEENEY, JJ.

PER CURIAM.

At a bench trial, the court convicted defendant of possession with intent to deliver (PWID) methamphetamine, MCL 333.7401(2)(b)(*i*), possession of less than 25 grams of cocaine, MCL 333.7403(2)(a)(*v*), and maintaining a drug house, MCL 333.7405(1)(d). The trial court sentenced defendant, a fourth-offense habitual offender, MCL 769.12, to concurrent terms of 84 to 240 months' imprisonment for the PWID conviction and 365 days in jail for the two remaining convictions. Defendant's sentences were to be served concurrently with his sentence in a separate case, Docket No. 2020-245684-FH,[1] but consecutive to the case for which he was on parole when he committed the current offenses, MCL 768.7a(2). Defendant appeals as of right, challenging the proportionality of his prison sentence as well as the reissuance of the charges in this case. We affirm.

## I. FACTUAL BACKGROUND

On February 17, 2021, police were conducting surveillance of defendant's house in Monroe, Michigan because they suspected he was trafficking narcotics. An officer saw defendant, a parole absconder, who had multiple warrants out for his arrest and whose driver's license was suspended, leave his house and drive away in a white Ford.

---

[1] Because defendant was on bond for the 2020 case when he committed this offense, the sentencing court had discretion to impose a consecutive sentence, MCL 768.7b(2)(a).

The police conducted a traffic stop. During a search of defendant's vehicle, the officers found a lockbox under the passenger floorboards. The lockbox contained a digital scale, two baggies of a "white powdery substance," several packaging baggies with images of red dice on them, and a pill bottle with a "crystal-like substance" inside it.

The police also conducted a search of defendant's residence. They found mail addressed to defendant and a credit card in defendant's name. In defendant's bedroom, there were several plates with suspected drug residue on them, packaging baggies embossed with red dice logos, a glass tray with residue, a drug pipe, and a digital scale. In defendant's kitchen, packaging baggies, tin foil, and pill bottles filled with a crystal-like substance were found in the cabinets. In defendant's basement, a baggie with a drug pipe, two digital scales, and more packaging baggies with a red dice logo were found. Additionally, a firearm was found hidden in the rafters of the basement. An expert later testified that numerous messages recovered from a cell phone taken from defendant were indicative of drug trafficking.

Subsequent testing confirmed that the substances recovered were methamphetamine and cocaine. In total, there were 22.85 grams of methamphetamine and 0.99 grams of cocaine.

Although the court found defendant guilty of PWID methamphetamine, possession of less than 25 grams of cocaine, and maintaining a drug house, it acquitted him of being a felon-in-possession of a firearm, MCL 750.224f, and three counts of felony-firearm, MCL 750.227b.

At sentencing, the recommended minimum guidelines range for defendant's PWID conviction as a fourth-felony offender was 72 to 240 months' imprisonment. The probation department recommended a minimum sentence of 84 months' imprisonment, purportedly without considering defendant's habitual offender status. The prosecution requested a sentence "closer to the middle of the guidelines . . . ." Defendant asked for a sentence at the bottom of the guidelines. Explaining that defendant had a lengthy criminal history, including 11 previous felonies and 13 misdemeanors, and had been on both bond and parole when he committed this offense, the trial court imposed a sentence of 84 to 240 months' imprisonment.

## II. PLEA AGREEMENT

Defendant contends that the trial court erred when it denied his motion to dismiss the charges against him because the prosecution agreed to dismiss an earlier case, that charged him with the same crimes, as part of a plea bargain, which he fully performed. We disagree.

The record below reflects that on January 6, 2020, defendant was arrested in a separate and unrelated case for possession of methamphetamine, MCL 333.7403(2)(b)(*i*). During defendant's preliminary examination on that charge in Monroe County Circuit Court Docket No. 2020-245684-FH ("the 2020 case"), the district court added a witness intimidation charge, MCL 750.122(7)(a), after defendant attempted to have his girlfriend take responsibility for possessing the methamphetamine.

Thereafter, defendant was arrested for the offenses involved in this case on February 17, 2021, and charged in Monroe County Court Docket No. 21-246275-FH ("the 2021 case"). On August 5, 2021, the trial court set the 2021 case for trial on October 4, 2021. On September 28,

2021, the prosecution moved for a nolle prosequi[2] in the 2021 case because "PROCEEDING IS NOT IN THE INTEREST OF JUSTICE AT THIS TIME." The trial court granted the prosecution's motion that same day in an order stating: "Motion for nolle prosequi is granted and the case is dismissed without prejudice." The nolle prosequi made no reference to any agreement between defendant and the prosecution regarding prohibiting the prosecution from reauthorizing the charges issued in the 2021 case in the future or regarding defendant's assistance in a separate investigation.

On October 4, 2021, the parties appeared in court on the 2020 case, purportedly for defendant to enter a plea. Defense counsel asked for additional time to discuss the plea with defendant about an issue that had arisen that morning. Because the assigned prosecutor had failed to appear, the court recessed and reconvened 18 minutes later.

In the interim, the parties entered into a written agreement in the 2020 case. Defendant agreed to plead guilty to possession of methamphetamine as a fourth-felony offender, the prosecution agreed to dismiss the witness intimidation charge, and both parties agreed to a minimum 24-month sentence. Moreover, "[t]he defendant acknowledge[d] reading [the] Plea Agreement and fully understand[ing] that [its] terms constitute[d] the entire agreement between the parties and that there [was] no other agreement express or implied concerning [the 2020 case]." Defendant, defense counsel, and the prosecuting attorney signed the agreement.

The prosecutor later placed the terms of the agreement in the 2020 case on the record. The court swore defendant in and asked him if he understood the agreement. Defendant answered affirmatively. The court asked if defendant intended to enter into the agreement, and defendant again responded affirmatively. The court also asked defendant if he understood that if the court accepted his plea, he was "giving up the right to claim later [that his plea] was the result of some promise or threat not set forth on the record or that it wasn't [his] idea to sign [the plea agreement] in the first place[?]" Defendant responded affirmatively. The court asked defendant whether "[o]ther than the plea agreement, anybody [had promised him] anything to get [him] to plead guilty?" Defendant answered, "No, sir." The court then inquired whether anyone had threatened defendant and he again responded negatively. When the court asked "[w]hose choice is it to plead guilty," defendant responded: "Mine." The trial court also asked whether defendant had sufficient time to talk to counsel and was satisfied with counsel. Defendant responded affirmatively. Thereafter, the court determined that defendant's plea in the 2020 case was "knowingly, understandingly[,] and voluntarily made," and accepted it.

In March 2022, the prosecution reauthorized all of the charges from the 2021 case in this 2022 case. In February 2023, defendant filed a "motion for specific performance of fulfillment of cooperation agreement and dismissal." Defendant asserted that the "dismissal in [the 2021 case] was based on Defendant's cooperation on another matter with law enforcement . . . ." Defendant argued he was in "full compliance and fulfilled his obligations [by providing truthful information

---

[2] " 'Nolle prosequi' is defined as '[a] legal notice that a lawsuit or prosecution has been abandoned' . . . ." *People v Guthrie*, 317 Mich App 381, 384 n 3; 894 NW2d 711 (2016), quoting Black's Law Dictionary (10th ed).

about the separate criminal investigation]," and thus, pursuant to the alleged agreement in the 2021 case, the instant charges had to be dismissed. Alternatively, defendant alleged that he pleaded guilty in the 2020 case "pursuant to the implicit, ostensible, or express agreement to dismiss [the 2021 case]." Defendant further posited that the prosecution's dismissal on the day of trial "could never justify reinstituting [the] charges." Finally, defendant contended that due process and equity compelled the court to find "an agreement was reached" regarding the 2021 case and to dismiss the instant case with prejudice.

The prosecution opposed defendant's motion to dismiss, arguing that there was no plea agreement regarding the reissued charges. First, there was nothing in the 2020 plea agreement or plea that required the present case to be dismissed. Second, there was no agreement reflected in the 2021 nolle prosequi motion or order. Because there was no plea agreement, the court had to deny defendant's motion for specific performance regarding the reissued charges in this case.

At the motion hearing, both parties argued consistent with their written submissions. The prosecution added that about two weeks before trial in the 2021 case, defendant came forward, stating that he had some information. According to the prosecutor, defendant was truthful with the police; however, "it didn't go anywhere" and the investigation into that separate case "is still ongoing." The prosecutor added that she and current defense counsel had contact with the attorneys involved in the 2021 case "and yet still [current defense counsel] cannot come into this Court and say Judge, this is the agreement because there wasn't and that is known by all the parties involved. That is what is reflected in any of the written documents associated with this case." Simply put, there was no agreement preventing the refiling of the charges placed on the record. Defendant then acknowledged that the alleged agreement in the 2021 case "may not be expressly stated in a transcript or in a plea agreement," but maintained that there was either an express or implied agreement that the charges would be dismissed if defendant assisted the prosecution in the other investigation.[3]

The trial court determined that there was no plea agreement involving the charges in the current case. That defendant provided information was "not an agreement . . . ." Indeed, as to the 2021 case, "[t]he nolle [prosequi motion] says clearly [that the 2021 charges were dismissed] [']at this time,['] which . . . anticipate[d] the possibility of a reauthorization" and "there [was] no agreement that the charges . . . would remain dismissed." Therefore, the prosecution retained the discretion to dismiss and reauthorize the charges. Moreover, the trial court explained that it could not act in equity or require specific performance, and it concluded that it "[did] not have the authority" to enforce a nonexistent agreement. Accordingly, the court denied defendant's motion.

We review a lower court's factual findings regarding the terms of a plea agreement for clear error. See e.g., *People v Abrams*, 204 Mich App 667, 673; 516 NW2d 80 (1994), citing *People v Walton*, 176 Mich App 821, 825-826; 440 NW2d 114 (1989); MCR 2.613(C). "A finding of fact is clearly erroneous if, after a review of the entire record, an appellate court is left with a

---

[3] Defendant never provided an affidavit from prior defense counsel, the prior prosecutor, the detective, or even himself to support his allegation that there was a plea agreement in the 2021 case to dismiss the charges in exchange for information about the other ongoing investigation.

-4-

definite and firm conviction that a mistake has been made." *People v Swirles*, 218 Mich App 133, 136; 553 NW2d 357 (1996).

Under MCR 2.507(G), "[a]n agreement or consent between the parties or their attorneys respecting the proceedings in an action is not binding unless it was made in open court, or unless evidence of the agreement is in writing, subscribed by the party against whom the agreement is offered or by that party's attorney."[4]  And, " '[w]hen a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled.' "  *People v Temelkoski*, 501 Mich 960, 961; 905 NW2d 593 (2018), quoting *Santobello v New York*, 404 US 257, 262; 92 S Ct 495; 30 L Ed 2d 427 (1971).  See also *People v Reagan*, 395 Mich 306; 235 NW2d 581 (1975) (The prosecution's acknowledged agreement to dismiss criminal charges against the defendant if he passed a polygraph, which was reflected in the court's nolle prosequi order, was binding despite the prosecutor's subsequent misgivings about the polygraph's accuracy and required dismissal.).  Further, a "trial court's authority is limited to reversing the prosecutor's decision [to charge a defendant] only if it constitutes an abuse of power . . . ."  *People v Morrow*, 214 Mich App 158, 161; 542 NW2d 324 (1995).  Specifically, "the trial court's authority over the discharge of the prosecutor's duties is limited to those activities or decisions by the prosecutor that are unconstitutional, illegal, or ultra vires."  *Id*.

In this case, there is no evidence of a plea agreement regarding the underlying charges. Beginning with the 2020 case, defendant and the prosecution had a written plea agreement, which did not involve the 2021 charges.  The plea agreement in the 2020 case never referred to defendant assisting the prosecution with a separate investigation in exchange for the dismissal of any charges. To the contrary, defendant expressly acknowledged that the 2020 plea agreement "constitute[d] the entire agreement between the parties and that there [was] no other agreement express or implied concerning [the 2020 case]."  See MCR 2.507(G); *Mooradian*, 221 Mich App at 319-320.  And, during his plea in the 2020 case, defendant, who was under oath, admitted that he understood he was "giving up the right to claim later [that his plea] was the result of some promise or threat not set forth on the record . . . ."  Defendant further denied that anyone had promised him anything, outside of the plea agreement, "to get [him] to plead guilty [in the 2020 case.]"  See *People v White*, 307 Mich App 425, 430; 865 NW2d 1 (2014) (This Court upheld the trial court's denial of the defendant's request for a hearing because permitting him to attack his prior "sworn testimony would allow him to benefit from perjury . . . [and] to countenance a fraud upon the [c]ourt.").

Turning to the 2021 case, the prosecutor's 2021 nolle prosequi motion clearly stated that "PROCEEDING [in the 2021 case was] NOT IN THE INTEREST OF JUSTICE AT THIS TIME," and thus, the charges could be reauthorized.  See *Reagan*, 395 Mich at 317 ("Normally a [n]olle prosequi is a dismissal without prejudice which does not preclude initiation of a subsequent prosecution.");  *People v McCartney*, 72 Mich App 580, 585; 250 NW2d 135 (1976).  Furthermore,

---

[4] We note that MCR 2.507(G), formerly MCR 2.507(H), is applicable in criminal cases through MCR 6.001(D).  See *People v Mooradian*, 221 Mich App 316, 319-320; 561 NW2d 495 (1997) (finding that a plea agreement was not binding because it did not meet the requirements of MCR 2.507(G)).

the trial court's order granting the prosecution's motion for nolle prosequi dismissed the 2021 case "without prejudice." *Id*. The prosecution reauthorized the 2021 charges against defendant in the instant case in 2022.

Based on this record, the trial court did not clearly err when it determined that there was no plea agreement between the parties regarding the charges underlying this case. Nor was there any evidence that the prosecution abused its power when it reauthorized the charges against defendant. Accordingly, the trial court properly denied defendant's request to dismiss this case.

## III. SENTENCING

Defendant also argues the minimum sentence for his PWID conviction is unreasonable and disproportionate. We disagree.

"[D]efendants may challenge the proportionality of any sentence on appeal[,] and [] the sentence is to be reviewed for reasonableness." *People v Posey*, 512 Mich 317, 360; 1 NW3d 101 (2023). Further, "sentencing decisions are reviewed for an abuse of discretion[.]" *Id*. at 325. A trial court abuses its discretion if the sentence imposed is not "proportionate to the seriousness of the circumstances surrounding the offense and the offender." *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017) (quotation marks and citation omitted). When the sentence imposed is within the guidelines' minimum recommendation, a reviewing court applies a nonbinding presumption of proportionality, "through which the defendant bears the burden of demonstrating that their within-guidelines sentence is unreasonable or disproportionate." *Posey*, 512 Mich at 359. However, "the guidelines remain highly relevant to sentencing decisions." *Id*. And the following factors, which are nonexhaustive, may be considered by the trial court under the proportionality standard:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Lampe*, 327 Mich App 104, 126; 933 NW2d 314 (2019) (quotation marks and citation omitted).]

In this case, defendant's minimum sentence is within the recommended sentencing guidelines range and is presumptively proportionate. *Posey*, 512 Mich at 360. To overcome this presumption, "the defendant bears the burden of demonstrating that [his] within-guidelines sentence is unreasonable or disproportionate." *Id*. at 359.

Defendant argues that the guidelines were entitled to little weight because they failed to account for two mitigating factors: (1) defendant's assistance to law enforcement in the ongoing investigation and (2) defendant's status as a father with strong family ties, whose "loved ones will help him with his reentry process and deter him from committing" future crimes. We disagree.

Although it is true that defendant's purported assistance and status as a father were not factored into the sentencing guidelines, during sentencing, defense counsel specifically argued that

the court should consider defendant's cooperation in another investigation as a mitigating factor, despite the lack of a formal agreement.[5]  Defense counsel added:

> I think it would be totally okay for the Court to follow the sentencing guidelines. It would be a fair and proportionate sentence to sentence [defendant] within [the recommendation].  Certainly, nobody is suggesting [that there are] any compelling circumstances to sentence him under [the sentencing guidelines recommendation]."

Defense counsel thereafter asked "the Court to follow the guidelines, [and] sentence [defendant] to the minimum guidelines."  Arguably, counsel's earlier remark waived any argument regarding the proportionality of defendant's sentence.  In any event, the sentencing court was fully apprised of defendant's stance, and it declined to address defendant's argument, noting that it had previously ruled that an agreement would actually require both sides to agree.

As to defendant's status as a father, who had the continuing support of his mother, brother, and long-time companion, despite his attempt to convince her to take responsibility for the 2020 offense, those facts were reflected in defendant's Presentence Investigation Report (PSIR), MCL 771.14.  Contrary to appellate counsel's argument, it is understandable that trial counsel would not have raised defendant's status as a father during sentencing.[6]  And, despite having the support of these two family members and his long-time companion, defendant continued to commit criminal acts.  Thus, neither of these considerations satisfies defendant's burden under *Posey*.

Defendant further argues that his sentence is unreasonable because it affords him little opportunity for rehabilitation and does little to protect society or to deter others from committing like offenses.  We disagree.  Notably, the PSIR reflects that "defendant has been afforded opportunities to engage in various forms of substance abuse treatment[;]" yet, he "continues to engage in new criminal behavior."  To the extent that defendant characterizes his current sentence as "stiff," it provides him with time and services to address his issues, it deters others from committing like offenses, and it protects society during his incarceration.

Finally, defendant argues that his prior record does not justify the sentence.  Defendant contends that many of his offenses were misdemeanors, some of which could not be scored under the guidelines.[7]  Defendant adds that his "early, repeated contact with the criminal legal system

---

[5] The prosecutor responded that defendant's alleged cooperation in the separate investigation should not be considered a mitigating circumstance because "[n]othing conclusive has come of [it]" and that investigation was ongoing.

[6] Defendant had two children.  He had not had any contact with one of them.  As to the other child, his contact was back-and-forth, but he had no contact with her after he went to prison in 2021.

[7] While true that defendant had 13 prior misdemeanor convictions, he also had 11 prior adult felony convictions and a juvenile history that began when he was 13.  To the extent that certain misdemeanors were not scored under Prior Record Variable (PRV) 5, MCL 777.55(2), defendant

suggests that [the system] has failed him . . . ." We disagree. Our Supreme Court recognizes that "[t]he premise of our system of criminal justice is that, everything else being equal, the more egregious the offense, and the more recidivist the criminal, the greater the punishment." *People v Babcock*, 469 Mich 247, 263; 666 NW2d 231 (2003). Thus, the sentencing court properly considered defendant's lengthy criminal history as well as his status as a parolee on bond.[8] And we conclude that defendant's status as a recidivist offender is insufficient to meet his burden under *Posey* to demonstrate that his sentence is unreasonable or disproportionate.

Defendant next contends that the trial court did not explain its sentence other than referencing defendant's prior criminal record, his bond status and his status as a parolee, all of which are factors already considered in the guidelines.[9] Defendant's argument ignores that the sentencing guidelines are calculated by considering a defendant's criminal history as well as the circumstances surrounding the offense, see MCL 777.21 through MCL 777.69. And, as we have already explained, the sentencing court articulated appropriate considerations to support its PWID sentence. *Babcock*, 469 Mich at 263.

Review of the circumstances surrounding the PWID conviction and defendant's criminal history leads us to conclude that the sentencing court did not abuse its discretion in imposing an 84-month minimum sentence for defendant's PWID conviction. In sum, the trial court's sentence was proportionate to the seriousness of the offense and the offender when it imposed a sentence at the low end of the guidelines recommendation.

Affirmed.

/s/ Anica Letica
/s/ Kristina Robinson Garrett
/s/ Kathleen A. Feeney

---

nevertheless received the highest score possible for "7 or more prior misdemeanor convictions or prior misdemeanor juvenile adjudications," MCL 777.55(1)(a).

[8] Under PRV 6, MCL 777.56(1)(c), a sentencing court may score 10 points when "[t]he offender is on parole, probation, or delayed sentence status or on bond awaiting adjudication or sentencing for a felony." While the statute is written in the disjunctive, *People v Allen*, 507 Mich 597, 607 n 16; 968 NW2d 532 (2021), defendant was not only on parole for one felony, but also on bond for another felony.

[9] Defendant is mistaken that the sentencing court tacked on a discretionary consecutive sentence. The court exercised its discretion in favor of imposing a concurrent sentence given defendant's bond status in the 2020 case. See footnote 1. However, the trial court was required to impose the PWID sentence consecutively to the one for which defendant had been paroled. See MCL 768.7a(2).

-8-